# First National Bank of Scranton *versus* Higbee & Co.

1. A fund which the acceptor of an overdue draft deposits in the bank where the draft is payable, in his own name, but "to pay the draft," may be withdrawn by him at any time prior to the bank's receipt of the draft. Such appropriation of the fund "to pay the draft" is revocable by the depositor; and, if so withdrawn by him, the bank is not responsible to the drawers for having parted with the fund.

2. A. drew a draft on B. payable at a bank, which draft was accepted by the drawee. The draft was dishonored at maturity and returned to A. B. then sent his brother to the bank with a certain fund to apply on the draft. This fund was deposited to B's credit, and a receipt given stating that it was "to pay A's draft." Afterwards B. withdrew the deposit, giving back the receipt. In an action of assumpsit brought by A. against the bank for the amount:
   *Held*, that plaintiff was not entitled to recover.

February 24th, 1885. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, and CLARK, JJ. GREEN, J., absent.

ERROR to the Court of Common Pleas of *Lackawanna* county: Of January Term, 1885, No. 225.

Assumpsit, by Higbee & Co., against the First National Bank of Scranton, to recover the sum of $600, deposited by John B. Gillespie, in his own name, with the bank defendant, for the purpose of paying a certain draft drawn upon him by plaintiffs, and by him accepted.

On the trial, before HANDLEY, P. J., the following facts appeared: Plaintiffs drew a draft on John B. Gillespie at thirty days for the sum of $797.76, which draft was accepted by Gillespie, payable at the Third National Bank of Scranton. The draft was sent from a bank in Philadelphia to the defendant bank for collection, and not being paid at maturity was returned to Philadelphia. Gillespie sent his brother to the defendant with $600 to apply on this draft, who, learning from the defendant's cashier that the draft had been returned to Philadelphia, left the money with the defendant, receiving a certificate of deposit in the following form:—

First National Bank of Scranton, Pa.,
SCRANTON, January 5th, 1880.

J. B. Gillespie:

Your account has credit to-day for the following deposit—$600.

To pay Higbee draft.          J. A. LINEN, Cashier.

The only entry on the books of the bank was the following credit—January 5th, 1880, J. B. Gillespie, $600.

[Bank v. Higbee.]

Subsequently, and before return of the draft to the defendant bank J. B. Gillespie returned the certificate of deposit and drew out the $600 by check. Four days later the plaintiff presented to the bank the draft and a check of the plaintiffs for $600 on the bank was received by the bank for collection the same day. Payment of the $600 was refused, whereupon this action was brought.

The defendant requested the court to charge: "That even if John B. Gillespie had personally deposited the money and received the deposit certificate which had been put in evidence, yet he would have had a right to revoke his direction to pay the Higbee draft at any time before the same was paid by the bank." Refused. Exception. (Seventh assignment of error.)

Verdict and judgment for plaintiffs, whereupon the defendants took this writ of error, assigning for error, inter alia, the refusal of defendant's point.

*W. H. Jessup* (with whom was *I. J. Post*), for plaintiffs in error.—Where an instrument payable at a bank is lodged with the bank for collection, the bank becomes the agent of the payee to receive payment, and where such instrument is not lodged with the bank, whatever the bank receives from the maker to apply upon the instrument it receives as his agent, not as the agent of the payee: Ward v. Smith, 7 Wallace, 447. A direction by a depositor to a bank to hold certain funds at the disposal of a third person is an executory order and revocable: Morse on Banking, 304; Gibson v. Minet, 2 Bingham, 7; Geist's Appeal, 8 Out., 351. That the bank in such cases is not the agent of the payee appears in this, that if upon presentation payment is refused from the funds deposited, the action is against the maker and not against the bank: Cohen v. Hale, 3 L. R. Q. B. D., 371; Pease v. Warren, 29 Mich., 9.

*Edward B. Sturges*, for defendants in error.—This deposit was made for a defined use, namely, to pay the Higbee draft. The receipt of money for a defined use amounts to an agreement on the part of the person receiving it that he will not apply it to any other: Smuller v. Union Canal Co., 1 Wr., 68; U. S. Bank v. Macalester, 9 Barr, 482. An order by a person making a deposit at a banker's for payment of that money to a third party, becomes irrevocable when the bank assents to that order: Saylor v. Bushong, 4 Out., 23: National Bank v. Cook, 23 Smith, 483.

Mr. Justice PAXSON delivered the opinion of the court, March 30th, 1885.

This case is free from difficulty. Of the numerous assignments of error we select the seventh as the only one which requires discussion. It raises the pivotal question in the cause.

The defendant's seventh point called upon the court to instruct the jury: "That even if John B. Gillespie had personally deposited the money, and received the deposit ticket in evidence, yet he would have had a right to revoke his direction to pay the Higbee draft at any time before the same was paid by the bank."

The learned court declined to affirm this point.

To understand the question which this ruling presents, it is necessary to give a brief summary of the facts. Higbee & Co., the plaintiffs below, had drawn their draft on John B. Gillespie for $797.76, at thirty days. The draft was accepted by Gillespie, but was not paid at maturity, and was returned to the bank in Philadelphia, from which it had been received. Subsequently John B. Gillespie sent his brother, Thomas Gillespie, to the First National Bank of Scranton with six hundred dollars to apply on this draft. Being informed by the cashier that the draft had been returned to the bank from which it had been received, Thomas Gillespie left the money with the cashier, and received from that officer a certificate of deposit in favor of John B. Gillespie for $600 "to pay Higbee draft." This certificate was given by the brother to John B. Gillespie, who kept it for seven days, when he drew his check upon the bank for six hundred dollars; sent it with the certificate of deposit to the bank and drew out the money. The draft in the meantime had not been returned to the bank. Subsequently Higbee & Co. brought suit against the bank for the $600 and recovered a verdict.

It needs neither argument nor authority to show that the money deposited was the money of J. B. Gillespie, and as such under his control. It is true his brother had deposited it to meet the Higbee draft, but assuming, as the point does, that the money had been so deposited by J. B. Gillespie himself, or by his authority, he had the power to revoke such direction. The money had not been applied to the draft by the bank when Gillespie's check was presented, and could not have been as the draft was not there. Had the bank failed between the date when the money was deposited and when it was drawn out upon Gillespie's check, the loss would have fallen on him, not on Higbee & Co. The latter had no interest in the money until its application to their draft. An order or direction on the part of Gillespie to so apply it was in its nature revocable up to the moment of its application. Had it been so applied the power of revocation would have ceased to exist.

The deposit of the money to pay the draft was not an equit-

able assignment of the fund. Had it been deposited to the credit of Higbee & Co. to meet the draft the case would have been different. But it was not, nor could it well have been without risk to Gillespie, as the draft might have been discounted and held by other parties. The money was deposited to the credit of Gillespie, and the bank could not have refused to pay it out on his check. It could not have paid it to Higbee & Co. because it had no such order; it had no knowledge even that they ever owned the draft; the draft itself was not there, and there could therefore have been no application to its payment. There was, at most, a direction to apply the money, which was a mere executory order and revocable: Morse on Banking, 304; Gibson *v.* Minet, 2 Bingham, 7; Geist's Appeal, 41 Leg. Int., 500.

We have discussed the case upon the theory that John B. Gillespie authorized the deposit in the manner above stated. The evidence is that he did not. He sent his brother to the bank with the $600 to apply on the draft. Thomas Gillespie had no instructions further; certainly none to leave the money in the bank if the draft was not there; still less to pay it to the agent of Higbee & Co., or deposit it to their credit or for their benefit.

> We are of opinion that Higbee & Co. have no cause of action against the bank, and the judgment therefore must be reversed.