## Golden State Fruit Distributors, Inc., v. Electric City Bank of Scranton.

*Banks and banking—Special deposit—Right of depositor to withdraw— Equitable assignment—Certified check.*

1. A special deposit with a bank, to be applied to a particular purpose, does not create an equitable assignment of the fund, nor does it place it beyond the control of the depositor who may still draw it out, nor does it give the proposed recipient of the fund any right therein.

2. A depositor in a bank has control over the funds in his account until paid or transferred in accordance with his orders, and may revoke his instructions or appropriations relative thereto up to the point when the rights of others attach.

3. There can be no revocation of a certified check after its delivery; until then, a direction to the bank by the depositor would be effectual.

4. Delivery of a certified check to the bank by the depositor for the payee is not the equivalent of delivery to the payee.

Statutory demurrer. C. P. Lackawanna Co., March T., 1924, No. 561.

*L. P. Stark,* for plaintiff; *C. B. Comegys,* for defendant.

EDWARDS, P. J., Dec. 29, 1924.—Plaintiff is a corporation, having its principal place of business in the State of California. It claims the right of action against the defendant on the ground of an alleged implied contract. The facts gathered from the pleadings are as follows:

On May 22, 1923, the plaintiff and one William Rossi, of Scranton, Pa., entered into a written contract, a copy of which is attached to the statement of claim, whereby the plaintiff agreed to sell, and the said William Rossi

agreed to buy, four carloads of grapes, valued and sold for $5440. William Rossi, under the contract, was to pay $1000 down, receipt of which plaintiff therein acknowledges. The cashier of the defendant bank wrote across the face of the contract, "We hold certified check to cover above contract," and at the same time, on the day following, wrote to the plaintiff a letter, a copy of which is attached to plaintiff's statement, the material part of which is as follows: "There has been deposited $1000 by William Rossi to provide for shipment of grapes as per your contract dated May 23, 1923," etc., etc.

Plaintiff claims that these two quoted statements give rise to the implied contract upon which suit is brought, and that the sum stated should go to the plaintiff as unliquidated damages. There is no allegation in the plaintiff's statement of claim that the grapes were ever shipped, or tendered, or that the plaintiff was compelled to sell them for less than the contract price.

The question to be decided is: Does the statement show any obligation on the part of the Electric City Bank to pay the $1000 to the plaintiff?

The letter of May 23, 1923, in which the defendant notified the plaintiff that funds had been deposited to cover a certain contract, and which letter forms the basis of this suit, was merely a notice that William Rossi, a customer of the bank, had deposited money with it to be applied to a particular purpose, or, in other words, "a special deposit" had been created. But a special deposit does not create an equitable assignment of the fund, nor does it place it beyond the control of the depositor who may still draw it out, nor does it change the ordinary creditor-debtor relationship of customer and bank, nor does it give the proposed recipient of the fund any right therein.

A case from our own court, reported in 109 Pa. 130, First National Bank of Scranton v. Higbee & Co., settles the question of law involved in the case at bar in favor of the defendant. In the Higbee case the Supreme Court states the law as follows: "It needs neither argument nor authority to show that the money deposited was the money of J. B. Gillespie, and, as such, under his control. It is true his brother had deposited it to meet the Higbee draft, but assuming, as the point does, that the money had been so deposited by J. B. Gillespie himself, or by his authority, he had the power to revoke such direction. The money had not been applied to the draft by the bank when Gillespie's check was presented, and could not have been, as the draft was not there. Had the bank failed between the date when the money was deposited and when it was drawn out upon Gillespie's check, the loss would have fallen on him, not on Higbee & Co. The latter had no interest in the money until its application to their draft. An order or direction on the part of Gillespie to so apply it was in its nature revocable up to the amount of its application. The deposit of the money to pay the draft was not an equitable assignment of the fund. Had it been deposited to the credit of Higbee & Co. to meet the draft, the case would have been different. . . . There was, at most, a direction to apply the money, which was a mere executory order and revocable."

The same ruling is followed by our Superior Court in the case of Fisher v. North Penn Bank, 77 Pa. Superior Ct. 558, in which Judge Keller says: "A depositor in a bank has control over the funds in his account until paid or transferred in accordance with his orders, and may revoke his instructions or appropriations relative thereto up to the point when the rights of others attach."

And a clear statement of the law is given in 7 Corpus Juris, 632, in the following language: "In using deposits made for the purpose of having them applied to a particular purpose, the bank acts as the agent of the depositor, and if it should fail to apply it at all, or should misapply it, it can be recovered

as a trust deposit; and the agency created by the deposit is revocable by the depositor at any time before the purpose of the deposit has been accomplished."

We state, further, that check, certified or not certified, is not a binding contract until it is delivered. The following text statements are applicable to the present case:

"Every contract on a negotiable instrument is incomplete and revocable until the delivery of it for the purpose of giving it effect. The mere drawing of a check, which the drawer retains in his possession, forms no contract, and no person can gain an enforceable right thereto until it has actually been delivered by the drawer, or by some one acting in his behalf:" Brady's The Law of Bank Checks, 35.

"Where a bank had marked a check 'good,' but, while still in the bank's possession and before it had delivered the certified check to the holder, an order was received from the drawer revoking the check, it was held that the bank must obey the order. It had incurred no liability, for delivery of the check after certification was necessary to raise the obligations imported by a certified check in the hands of a holder. And, having incurred no liability, it was not free to create one by delivery in violation of the drawer's orders, and then expect him to bear the consequence:" Morse on Banks and Banking (5th ed.), § 399.

"There can be no revocation of a certified check after its delivery; until then, a direction to the bank would be effectual:" Bolles' Modern Law of Banking, 707.

Defendant's counsel claims that the plaintiff has no right of action for other reasons than those above discussed, such as, (1) that the plaintiff is attempting to enforce a penalty which the courts will not permit; and (2) that a guaranty is not enforceable against the guarantor unless notice of acceptance thereof was given. However, we need not discuss these questions.

Now, Dec. 29, 1924, judgment is entered for the defendant.

From William A. Wilcox, Scranton, Pa.