WM. PORTER, FOR USE, v. S. P. NELSON'S EXRS.

ERROR TO THE COURT OF COMMON PLEAS OF YORK COUNTY.

Argued May 17, 1888—Decided October 1, 1888.

1. Whether facts and circumstances relied upon to rebut the presumption of payment of a specialty after the lapse of twenty years, are of sufficient force for the purpose, if established, is a preliminary question of law for the court; but whether they are sufficiently established, if controverted, is a question of fact for the jury: See Gregory v. Commonwealth, preceding; Breneman's App., and Runner's App., following.

2. In the present case, evidence of oral admissions of the debtor, made within twenty years before suit, and tending to show non-payment of the indebtedness, were properly submitted to the jury, in connection with other evidence of facts from which payment might be inferred.

3. In a scire facias upon a judgment, with notice to the widow and devisees of the defendant, who is dead, the fact that the bond with warrant of attorney on which the judgment was confessed was found among the papers of the debtor after his death, raises a presumption of fact that the bond was obtained by payment of the debt.

4. In a suit by a claimant living, against the executors of a decedent, the testimony of the devisees is admissible to prove a fact occurring after the decedent's death though tending to prove inferentially the existence of the fact prior thereto: Rothrock v. Gallaher, 91 Pa. 108; Stephens v. Cotterell, 99 Pa. 188, followed; Foster v. Collner, 107 Pa. 305, and Adams v. Edwards, 115 Pa. 211, distinguished.

Before GORDON, C. J., PAXSON, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY and STERRETT, JJ., absent.

No. 7 July Term 1888, Sup. Ct.; court below, No. 28 April Term 1886, C. P.

On February 1, 1886, a scire facias was issued at the suit of William Porter, guardian of Robert McCall Nelson, for the use of Robert McCall Nelson, against Frances A. Nelson, executrix of Samuel P. Nelson, deceased, with notice to Johanna Nelson, Emerson Nelson, Maria Theresa Floyd and Frances A. Nelson, terre tenants, the object being to revive a certain judgment hereafter referred to, and to charge the lands of the decedent devised to his widow and heirs, named in the writ, with the payment of it. The pleas were, payment, payment with leave, etc.

At the trial on November 30, 1887, the essential facts appearing were as follows:

On March 29, 1860, William Porter, guardian of Robert McCall Nelson, entered judgment upon a bond with warrant of attorney, of date June 25, 1855, against Samuel P. Nelson, who was the father of Robert McCall Nelson. The bond was payable, $377.25, on April 1, 1856, and the balance on April 1, 1857, with interest. At this time Robert McCall Nelson was living with his father and continued to reside with him until April 1, 1880, when, having been married, he became a tenant on his father's farm, and remained such till the death of his father on February 9, 1884. The judgment had been assigned to Robert McCall Nelson, on March 15, 1865, when he had become of age, and at the time of the issuance of the writ was unsatisfied of record.

To rebut the presumption of payment from the lapse of time, the use plaintiff called William Nelson, his brother, and Robert Livingston, his father-in-law. These witnesses testified, the former to a conversation with Samuel P. Nelson in 1874, and the latter to a conversation with him in 1880, in which conversations oral admissions were made of the existence of the indebtedness; the testimony of these witnesses sufficiently appears in the charge of the court below.

As evidence on the part of the defendants, tending to show payment of the bond, they called Maria Theresa Floyd, one of the defendants, a daughter of Samuel P. Nelson, and offered to prove by her that a short time after her father's death, Robert, the use plaintiff, called at the house where her father had died to look up the plot of a survey, and in the search the bond upon which the judgment in suit had been entered was found, tied up with other papers of her father in a newspaper, and the plaintiff took it away with him. The plaintiff objected, that the witness was an heir and devisee of Samuel P. Nelson, deceased, and her testimony would have the effect of relieving the estate of the payment of a debt which existed before the decedent's death, and of relieving herself of the payment of money as one of the devisees.

By the court: I will admit the evidence.[3]

The defendants then called Miss Frances A. Nelson, and offered to prove that she was present with the preceding wit-

ness, when the bond was found among her father's papers and taken away by the use plaintiff. The offer was objected to for the same reason.

The objection was overruled and offer admitted.[4]

The testimony of both witnesses sufficiently appears in the charge of the court below.

The court, LATIMER, J., charged the jury and answered the points presented as follows :

\*    \*    \*    \*    \*    \*    \*    \*

Over thirty years from the date of the bond, over twenty-five years from the entry of the judgment, and over twenty years from the time plaintiff became of age, elapsed before this suit was brought. The obligor, Samuel P. Nelson, died in 1884, about twenty-nine years after the note was given, and nineteen years after the plaintiff became of age. The law is that after twenty years have elapsed from the time of the maturity of a debt, the debt is presumed to be paid. In the case of Kline v. v. Kline, 20 Pa. 503, the Supreme Court says that a presumption arises "from a lapse of more than twenty years without suit or demand after the money becomes payable. Though not possessing the force of a statutory limitation, which extinguishes the debt and requires a new promise or its equivalent to revive it, the presumption of payment from lapse of time is very strong and is favored in law as tending to the repose of society and the discouragement of stale claims." In Bentley's Appeal, 99 Pa. 500, the Supreme Court says " a debt which has been due and unclaimed, and without recognition, for twenty years, in the absence of explanatory evidence, is presumed to have been paid. This presumption prima facie obliterates the debt, and the onus of proof is upon the creditor, not to establish a new contract as is the case when a debt is barred by the statute of limitations, but to show that payment of the debt has not been made." Till that presumption is rebutted the defendants are not bound to open their mouths in defence. They can safely rest on the presumption. The presumption may be rebutted by evidence of facts, statements, and declarations of the debtor not consistent with such payment.

To rebut the presumption of payment which had attached in

this case, evidence was introduced by the plaintiff to which I will briefly call your attention. William Nelson, a son of Samuel P. Nelson, was called upon to testify to alleged declarations of Samuel P. Nelson, the debtor, not consistent with the idea that the bond had been paid. The witness said that, being in the field in 1874 with his father, a conversation arose about his father's indebtedness to the witness and to others, including the plaintiff; that the witness mentioned to his father his indebtedness to the plaintiff, Robert McCall Nelson, and then used the expression that his father sanctioned it, and on being pressed both on the second examination and the cross-examination, he said that his father didn't utter a word in response to his statement, but that he nodded his head; that he "sanctioned it" he repeated. Nothing seems to have been said, at least nothing is testified to have been said, on that occasion about the amount or character of the indebtedness, and it is proper to say that the testimony of the witness is very vague. Robert Livingston, the father-in-law of the plaintiff, was called, and testified, that at the time his daughter, who is married to the plaintiff, moved to the Nelson farm, where Mr. Nelson was then living, he had a conversation with Samuel P. Nelson, the defendant, and that Samuel P. Nelson had detailed to him an alleged contract between him and the plaintiff, in regard to the farm and stock and implements he had given him, and went on to say that he owed his son Robert $500 besides this stock; he owed his son Robert $500 for money that his aunt had willed to the plaintiff, and that they would fix it up at some subsequent period.

Now these two witnesses were the only ones who testified to any admissions by the defendant that this note was not paid. No evidence is given that any demand was made by the plaintiff himself, or any one in his behalf, for payment of this note.

Admissions of indebtedness made to any one but the creditor, are not entitled to the same weight in rebutting the presumption of payment as those made to the creditor. As is said by the Supreme Court in Bentley's Appeal: "When a person in conversation with a stranger respecting the claim of another, says he will not pay it, there is not the same reason for inferring recognition, that exists when the creditor requests and the debtor refuses payment. In the latter case not to deny is

to admit.   Besides, the debt is claimed.   But it does not concern the stranger whether the claim is existing or has been paid; he has no right to ask payment." When the creditor demands payment, or presents his claim and under such circumstances the debtor admits his indebtedness, the admission is of far more weight than such as were referred to here, to parties other than the debtor.   [If the case of the plaintiff stood alone on the conversations had with the witnesses William Nelson and Robert Livingston, I would deem them insufficient to rebut the presumption of payment.]² But in addition to that, it is shown that the plaintiff, the son of the defendant, lived in his family until his marriage, and then lived as a tenant on his farm up to the time of his death.   These are circumstances offered in this case, as tending to explain the delay of the plaintiff and his failure to demand the money of his father in his lifetime, proper to be considered in determining the question whether this bond has been paid.   I cannot say that the evidence introduced by the plaintiff in chief is insufficient to rebut the presumption of payment.   The testimony, its weight, the credibility of the witnesses, the correctness of their testimony are all questions for you.

The defendants to show that this bond has been paid, called Miss Frances A. Nelson and Mrs. Floyd, two of the defendants. They testified first, that on the day the parties came to town to prove the will of Samuel P. Nelson, Frances A. Nelson, the executrix, asked her brother Robert Nelson, who was the executor of the will, in the kitchen, how much her father owed him, and that he replied, "Nothing except $100, may be not quite so much, I have it all down in a book." And, that on a subsequent occasion in General Heiges' office, in answer to a statement made by Miss Frances Nelson in regard to the amount of indebtedness of her father's estate, made in reply to a remark of her counsel, the plaintiff in this case had said that his father didn't "owe him much, not more than $100, and may be not that much."   These statements are denied by the plaintiff, and they are denied by his brother and witness, William Nelson.   The jury heard the testimony on both sides, and it is for you to determine to which of the witnesses on this branch of the case you will give credit, whether you will believe the testimony of the executrix and her sister Mrs. Floyd,

to the statement that they say was made by the plaintiff, or whether you will believe the testimony of the plaintiff and his witnesses that no such statement was made. First you will readily see that if the plaintiff did on that occasion make the statement that has been attributed to him, that he is condemned out of his own mouth, his own statement of the amount of the indebtedness excluding the amount of the bond. But whether he testified truthfully, and whether he is to be believed on that branch of the case is exclusively for you to determine.

In addition to that, Mrs. Floyd and Miss Nelson testified that about a month after their father's death, the plaintiff came to their house and asked for the plot of a piece of land which had been owned by his father, and was among his father's papers; that a drawer containing a bundle of papers wrapped up in a newspaper, was brought down into the kitchen, and opened, and that Mrs. Floyd and the plaintiff examined these papers, and searched them for the plot or survey; that she found this bond on which this judgment was entered, which is now attempted to be revived by a scire facias; that she read enough of it to ascertain what it was, and then made the remarks which have been detailed to you and referred to in the addresses of the counsel, in regard to its having been the bond which her father had to give for Robert's money; and that the bond was taken away by Robert, he saying nothing at all on the subject, whether it was paid or not. [Now you will understand that where an obligation for the payment of money is found among the papers, or in possession of the obligor, he is presumed to have obtained it by payment.] [1]  But you will bear in mind in considering that question that the lips of the plaintiff are sealed as to anything that took place between him and his father in his lifetime; that he is incompetent to testify; he is rendered incompetent by law to testify to any such facts.

Now the case largely depends upon the credibility to be attached to the testimony of the witnesses, and that is to be determined from their manner of testifying, and the probability or the improbability, of what they have testified to; and those questions of the probability, of their credibility, and of the weight to be attached to the oral testimony of the witnesses, are questions entirely for the jury.

\*    \*    \*    \*    \*    \*    \*    \*

The plaintiff and defendants respectively have presented certain points on which they have asked me to charge you. I will read the points to you, and then I will read my answers to the points.

The court is requested to charge for the plaintiff:

1. The facts that the plaintiff was a minor when the bond was taken by his guardian and the judgment entered, and remained a minor about five years thereafter; that at the time the bond was assigned to him by his guardian soon after he arrived at the age of twenty-one years; the relationship of the plaintiff and Samuel P. Nelson; and that until his marriage in 1879 he lived with and worked for his father Samuel P. Nelson, the defendant in the judgment, and afterwards was his tenant until said Samuel P. Nelson's death, are circumstances in connection with the other evidence in the case for the jury to consider, to account for the delay of the plaintiff in enforcing the collection of the judgment in evidence, and to rebut the presumption of payment.

Answer: I answer that the plaintiff's first point is correct.

2. If the jury believe from the evidence that Samuel P. Nelson, within twenty years of his death in 1884, acknowledged that the debt in controversy was still unpaid, then the presumption of payment has been rebutted, and the plaintiff is entitled to recover the principal of the original judgment and interest on this amount.

Answer: I answer that plaintiff's second point is not correct.

3. If the jury believe from all the evidence in the case that the judgment in evidence was unpaid at the time of Samuel P. Nelson's death, the plaintiff is entitled to a verdict for the principal and interest on said judgment from April 1, 1855, until December 1, 1887.

Answer: I answer that the plaintiff's third point is correct.

The court is requested to charge for the defendants:

1. That a debt that is due and unclaimed for twenty years, in the absence of explanatory evidence is presumed to have been paid. What the debtor said to a third person about the debt has not the same weight, and that the same weight should not be given to it by the jury as if said to the creditor; that the only declarations attempted to be proven in this case are

those alleged to have been made to third persons in the absence of the creditor, hence they should have less weight given to them than if made to the creditor.

Answer: The defendants' first point is correct.

2. The alleged facts proven by plaintiff in this case do not sufficiently rebut the presumption of payment arising from lapse of time, and hence the court is requested to instruct the jury that the plaintiff is not entitled to recover.

Answer: This point I cannot affirm.

The jury returned a verdict for the defendants. Judgment being entered, the plaintiff took this writ, and assigned for error:

1, 2. The parts of the charge embraced in [ ] [1] [2]

3, 4. The admission of plaintiff's offers. [3] [4]

*Mr. John W. Bittenger* (with him *Mr. George W. Heiges*), for the plaintiff in error:

1. While it is true, as a general proposition, that when an obligation for the payment of money is found among the papers, or in the possession of the obligor, he is presumed to have obtained it by payment, yet we submit that the court should not have charged in this case as complained of. This was not a suit on the bond, but a scire facias upon a judgment of this court, remaining open and unsatisfied. The defence was payment, and no evidence by receipts or otherwise was produced showing payment. The bond, therefore, not being the foundation of the action, and no part of plaintiff's case, no presumption arose from the fact that it was found among the judgment defendant's papers after his death.

2. The only substantial ground of defence was the presumption of payment after the lapse of 20 years. Yet this presumption was fully rebutted by the testimony of William Nelson and Robert Livingston. While the former did not testify to any words of Samuel P. Nelson admitting the judgment indebtedness as existing, yet when in the conversation in 1874 he referred to it, his father assented to it and did not assert its payment. But the testimony of the latter witness was clear and unambiguous evidence of an express acknowledgment made by the father to the father-in-law of the plaintiff, both person-

ally interested in the fact. "It is not reasonable to presume a debt paid which the debtor says was not paid:" Stout v. Levan, 3 Pa. 235; Reed v. Reed, 46 Pa. 239.

3. Mrs. Floyd and Miss Nelson were children and devisees, and the latter the executrix, of Samuel P. Nelson, and were not competent witnesses to prove any event occurring or circumstance existing during the lifetime of their decedent: Foster v. Collner, 107 Pa. 305; Adams v. Edwards, 115 Pa. 211. These interested witnesses were clearly incompetent to prove "that which existed or took place in the testator's lifetime," to wit, the payment of the bond by the obligor and the having of it in his possession before his death.

4. Can it be that § 5, act of May 23, 1887, P. L. 158, changes the law under the acts of 1869 and 1870, the sole purpose of which was to establish absolute equality between litigants? If the act of 1887 gives every one not interested *against* the estate of a decedent a right to testify, while it closed the lips of a claimant, where will be the equality between parties?

*Mr. V. K. Keesey* (with him *Mr. D. J. Williams*), for the defendants in error:

1. It is admitted that the instruction that, where a bond is found among the papers or in the possession of the obligor, he is presumed to have obtained it by payment, is correct as a general proposition. The court stated the proposition as such, and in the next sentence cautioned the jury in considering that question that the lips of the plaintiff were sealed as to anything that took place between him and his father in his lifetime.

2. The instruction next complained of, that if the case stood alone on the conversations had with the witnesses named, the court would deem them insufficient to rebut the presumption of payment, is to be considered in connection with other portions of the charge. The first and third points of the plaintiff were affirmed, the second point of the defendants refused; and in the charge the court said: "I cannot say that the evidence introduced by the plaintiff is insufficient to rebut the presumption of payment," and the testimony was submitted to the jury. It is not error for the court to express an opinion on the weight of the evidence, if the facts are left to the jury: Commonwealth v. Snyder, 62 Pa. 160.

3. The testimony of Mrs. Floyd and Miss Nelson referred to a fact actually existing after the testator's death, and having no relation to any fact existing prior thereto, except by implication, and the implication did not render the testimony inadmissible: Rothrock v. Gallaher, 91 Pa. 108. Neither Foster v. Collner, 107 Pa. 311, nor Adams v. Edwards, 115 Pa. 211, affect the authority cited. Besides, why is it not competent to prove an occurrence between the plaintiff and defendants, taking place after their father's death? The inference that the bond was in the father's possession before his death is of little importance. The presumption of payment is just as strong, when the bond is found among testator's papers after his death, without any inference or implication.

4. By § 4, act of May 23, 1887, P. L. 158, an interest does not disqualify, except as provided in § 5. Section 5, e, provides that any person whose interest shall be adverse, shall be incompetent. In this case, the evidence was admitted in favor of the estate.

OPINION, MR. JUSTICE CLARK:

The bond out of which this controversy arises was executed by Samuel P. Nelson, 24 June, 1855; judgment was entered upon it in favor of William Porter, guardian, etc., 29 March, 1860; Robert McCall Nelson having arrived at the age of twenty-one years, it was assigned to him by his guardian on 15 March, 1865, and this scire facias was issued 1 February, 1886. The rule of law which presumes payment of all debts by specialty, etc., unclaimed and without recognition for twenty years plainly applies, therefore, unless the facts and circumstances established by the evidence are sufficient to repel or rebut that presumption. Whether this is so or not, as we said in Gregory v. Commonwealth, a case from the Middle District, argued at this term and not yet reported [ante, 611], is a question for the court. This presumption is very strong and is favored in law as tending to the repose of society and the discouragement of stale claims: Kline v. Kline, 20 Pa. 503. The testimony must therefore be of a satisfactory and convincing character: Peters's Appeal, 106 Pa. 340; Eby v. Eby, 5 Pa. 435; Sellers v. Holman, 20 Pa. 324. As we said in Gregory v. Commonwealth, it must, according to the cases, carry conviction to the mind

of the court that, if the facts alleged are true, the matters in issue are definitely and distinctly established. In a case like this the defendant relies upon a presumption of law which is binding alike upon the court and jury until invalidated by proof, and the plaintiff upon a presumption of fact only, which he claims to arise out of the evidence; whether or not the matters sought to be established are true, is a question for the jury; but whether the facts and circumstances relied on, if true, would legitimately give rise to the presumption of fact referred to, is necessarily a question of law for the court.

The evidence may consist of the defendant's admissions made to the creditor, his agent, or even to a stranger, but an admission of the existence of the debt will not be as readily implied from language casually addressed to a stranger as when addressed to the creditor in reply to a demand for the debt: Bentley's Appeal, 99 Pa. 500; Gregory v. Commonwealth, supra. As we said in the case last cited, the facts and circumstances relied on to rebut the presumption must necessarily exist within twenty years before suit brought, and, as the recollection of the exact words and import of an oral admission must necessarily become more indistinct with the lapse of years, the force of such an admission will in general be lessened as the time from its occurrence increases. But on the other hand, after twenty years the presumption will gather strength with each succeeding year and the evidence to overthrow it will be correspondingly increased.

At the bringing of this suit, thirty years and more had elapsed from the date of the bond; twenty-five years from the entry of the judgment upon it, and twenty-one years from the assignment to the present plaintiff. It may be said that the plaintiff was a minor and the suit was brought within twenty-one years after his minority; that he was a single man and lived with his father; yet no claim appears to have been made for six years after he was married and until two years after his father's death. No claim appears at any time to have been made by the plaintiff against Samuel P. Nelson, in his lifetime; and after his death, and after this great lapse of time, it is certainly not unreasonable that the plaintiff shall be held to clear proof of the facts relied upon to defeat the presumption that it has been paid. Especially is this so in view of the strong

corroborating fact that the original bond, after the death of Samuel P. Nelson, was found in the debtor's possession, among the papers which came into the hands of the executors of his will.

The first assignment of error is to that portion of the general charge in which the learned judge instructed the jury that where an obligation for the payment of money is found among the papers or in the possession of the obligor, he is presumed to have obtained it by payment. As a general principle this is undoubtedly true; it is but a presumption of fact, however, and would stand only until proof was given to the contrary. The bond was the original evidence of the indebtedness; it was the only authority that the plaintiff had for entering judgment, and the presumption is that he would not surrender it until he had received satisfaction. The presumption in a scire facias on the judgment may perhaps be slight, but the possession of the bond was certainly presumptive evidence of payment; it was a fact in support and corroboration of the strong presumption arising from lapse of time; and, as the rebuttal of the latter in any event called for satisfactory and convincing proof of non-payment, we cannot see that the particular instruction complained of, even if erroneous, could have done the plaintiff any harm, for the proof which would sufficiently repel the stronger would certainly rebut the weaker.

The court instructed the jury that if the plaintiff's case rested solely on the admissions made to William Nelson and Robert Livingston, he could not regard them as sufficient to rebut the presumption of payment, but that these admissions taken with the other facts and circumstances in the case were sufficient, if believed, for the purpose stated. " If the case stood alone," says the learned judge, " on the conversations had with the witnesses William Nelson and Robert Livingston, I would deem them insufficient to rebut the presumption of payment. But in addition to that it is shown that the plaintiff, the son of the defendant, lived in his family until his marriage, and then lived as a tenant on his farm up till the time of his death. These are circumstances offered in this case, as tending to explain the delay of the plaintiff and his failure to demand the money of his father in his lifetime, proper to be considered in determining the question whether this bond has

been paid." In view of the extraordinary length of time which had elapsed before this suit was brought, and of the fact that the bond was found to have been in the debtor's hands at his death, the court was not far wrong perhaps in saying that excluding the explanatory evidence of the kinship and family relation existing between the parties, the testimony of Nelson and Livingston, taken alone, would not be regarded as sufficient, for Nelson's testimony was too vague to have any effect, and Livingston's was but the recital of a casual conversation with a stranger, occurring seven years or more prior to the suit; but this portion of the charge was at all events a mere hypothesis and was so expressed, for the relation of father and son and the family relation were admitted, and the testimony of Nelson and Livingston was of course stronger when viewed in the light of these circumstances. The case was submitted to the jury on all the evidence taken together: the language of the learned judge is as follows: " The testimony, its weight, the credibility of the witnesses, the correctness of their testimony are all questions for you. . . . . Now the case largely depends upon the credibility to be attached to the testimony of the witnesses, and that is to be determined from their manner of testifying and the probability or improbability of what they have testified to, and those questions of the probability, of their credibility, and of the weight to be attached to the oral testimony of the witnesses are questions entirely for the jury."

According to the letter of the act of May 23, 1887, P. L. 158, Maria Theresa Floyd and Frances A. Nelson were competent witnesses to establish any fact, whether occurring before or after the death of Samuel P. Nelson. Whether the act of 1887, which in this respect would seem to be a departure from the settled principles of the act of 1869, is to be construed according to the letter, is a question we are not called upon to decide; however, these witnesses were not offered to establish any matter occurring before the death of Samuel P. Nelson. They were called to show that about thirty days after the decedent's death, in a search then being made for a draft of the testator's lands, the bond was found among the plaintiff's papers. It is of no consequence that this testimony might tend to prove, inferentially, that the same fact existed prior to

his death: Rothrock v. Gallaher, 91 Pa. 108; Stephens v. Cotterell, 99 Pa. 188. Their testimony did not, as in Foster v. Collner, 107 Pa. 305, and Adams v. Edwards, 115 Pa. 211, necessarily relate to a fact which existed or took place in the testator's lifetime. Independently, however, of the implication or inference which might be drawn as to facts existing in the testator's lifetime, the testimony was clearly competent to show the acts and declarations of the plaintiff when the bond was thus discovered. We are clearly of opinion that the learned judge of the court below was right in his rulings in the case, and

The judgment is affirmed.