## Gilmore to use *v.* Alexander, Appellant.

*Judgment—Payment—Presumption—Evidence—Burden of proof —Attachment execution—Lien—Dissolving—Practice—Pleadings —Admissions.*

1. In a proceeding to collect a judgment over twenty years old, the burden of proof is on plaintiff to overcome the presumption of payment.

2. In such case, where there is no question of the credibility of witnesses, the sufficiency of the evidence is for the court.

3. The presumption is rebutted, or does not arise, where there is affirmative proof, beyond that furnished by the specialty itself, that the debt has not been paid, or where there are circumstances that sufficiently account for the delay of the creditor.

4. The affirmative evidence may be direct or circumstantial, but must make a prima facie case of nonpayment, and so convincing as to justify a conclusion that the debt is not, in fact, paid.

5. In passing upon the sufficiency of the testimony to rebut the presumption, the court must consider the united strength of all the evidence and circumstances, and each case depends largely on its own facts.

6. The presumption of payment is strengthened by each year after the twenty.

7. Where defendant in a judgment twenty-four years old, on which an attachment execution had been issued, petitions for a non pros. and dissolution of the attachment, instead of asking that the judgment be satisfied, and averring when an answer is submitted accounting for the delay and no part of the judgment had been paid, permits each averment to go unchallenged by submitting the question to the court on the pleadings, his action is evidence tending to rebut the presumption of payment.

8. In such case, the fact that defendant does not testify, although in court on the trial in the attachment proceedings, does not affect the legal aspect of the case, inasmuch as the burden is on plaintiff, and the court has to decide the case on the evidence of plaintiff, and not that of defendant.

9. The statute does not limit the duration of the lien of a writ of attachment execution. If delay in prosecuting the writ is fully accounted for, no question can be raised of plaintiff's laches.

_Appeals—Assignments of error — Attachment execution — Non pros._

10. To raise the question of the duty of the lower court to non pros. an attachment execution, the order of the court thereon must be assigned for error.

Argued October 4, 1920.    Appeal, No. 220, Jan. T., 1920, by Archibald A. Alexander, from judgment of C. P. No. 4, Phila. Co., Dec. T., 1894, No. 693, on verdict for plaintiff, in case of Margaret Van Cleek Gilmore, to use of Fidelity Trust Co., remaining executor of John Alex-

ander, deceased, v. Archibald A. Alexander, defendant, and Fidelity Trust Co., remaining executor of John Alexander, deceased, garnishee. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING, SIMPSON and KEPHART, JJ. Affirmed.

Attachment execution sur judgment. Before FIN-LETTER, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $10,231.65. Archibald A. Alexander appealed.

*Error assigned,* among others, was (7) refusal of motion for judgment for defendant n. o. v., quoting record.

*M. Hampton Todd,* for appellant.—The evidence produced at the trial was insufficient to rebut the presumption of payment arising from lapse of time: Van Loon v. Smith, 103 Pa. 238; Lash v. Von Neida, 109 Pa. 207; Biddle v. Bank, 109 Pa. 349; Carter v. Turnpike Co., 208 Pa. 565; Breneman's App., 121 Pa. 641; Cannon v. Hileman, 229 Pa. 414; Kline v. Kline, 20 Pa. 503; Miller v. Overseers of Poor, 17 Pa. Superior Ct. 159; Second Natl. Bank of Titusville v. Thompson, 44 Pa. Superior Ct. 200; Gregory v. Com., 121 Pa. 611.

The failure of plaintiff to prosecute the attachment execution with due diligence required a binding instruction from the court in favor of defendant and for judgment for defendant notwithstanding the verdict for plaintiff: Wherry v. Wherry, 179 Pa. 84; Reed v. Penrose, 36 Pa. 214; Roig v. Tim, 103 Pa. 115; Waring v. R. R., 176 Pa. 172; Neel v. McElhenny, 189 Pa. 489; Upsal Street, 22 Pa. Superior Ct. 150.

*H. Gordon McCouch,* of *Dickson, Beitler & McCouch,* for appellee.—The testimony as taken at the trial was sufficient to overcome any presumption of payment of

the judgment: Neely v. Grantham, 58 Pa. 433; Ellwanger v. Moore, 206 Pa. 234.

While there may be cases in which abandonment of an attachment would be implied from delay, even great delay when satisfactorily explained will not have that effect: Cookson v. Turner, 2 Binney 453.

OPINION BY MR. JUSTICE WALLING, December 31, 1920:

This is a proceeding on an execution attachment, and the main question is the sufficiency of the evidence to rebut the presumption of payment of a judgment over twenty years old. In November, 1895, plaintiff recovered judgment against the defendant and issued an execution attachment. Defendant's father, John Alexander, had recently died and his executors were summoned as garnishees. After a contest, the will of John Alexander was finally sustained by a decision of this court in 1903. When he died he was trustee for three of his children under the will of their grandfather, George Jones, late of the State of Delaware, deceased. After John Alexander's death a new trustee was appointed in that state, who in 1900 filed a bill in equity in the United States Circuit Court for the Eastern District of Pennsylvania against the executors of the Alexander estate, for an accounting. This resulted in a protracted litigation involving, inter alia, on application to vacate the appointment of the new trustee, which was finally granted by the chancellor of Delaware in 1912. The bill in equity, however, was not formally dismissed until 1917. Meantime, in 1913, the three children, including appellant, filed a bill in equity against John Alexander's executors, in the United States court at Philadelphia, for substantially the same cause of action, which (in 1917) resulted in a final decree in favor of the defendant herein for the sum of $42,300.96. Thereafter, the surviving executor of the Alexander estate filed an account, upon the adjudication of which in 1918 the said sum was awarded appellant as a creditor, the award being

finally confirmed by the orphans' court, January 10, 1919. While named as a legatee in his father's will, there was nothing in the hands of the executors to which he was entitled as such; so until the conclusion of the equity suit in 1917, it could not be determined that the executors had in their hands any funds subject to the attachment; nor could the amount thereof be definitely known until the confirmation of the adjudication. In February, 1897, the plaintiff, Mrs. Gilmore, assigned the judgment to John Alexander's executors, who, since that time, have occupied the dual position of use-plaintiff and garnishee. Pursuant to the adjudication, on order of the orphans' court, the surviving executor paid appellant all of the sum above stated, except $11,500, retained on account of the attachment.

On February 28, 1919, the appellant, Archibald Alexander, filed a petition in this case praying for a non pros. and dissolution of the execution attachment for want of prosecution. To this the surviving executor, as garnishee and use-plaintiff, filed a sworn answer setting up as cause for the delay the averments that until the adjudication it had no property of defendant in its hands to answer the attachment and that the filing of interrogatories would have been vain; and also stating "that, from the day when said judgment was marked to its use to the date of this answer, the said defendant, Archibald A. Alexander, has continuously resided outside of this Commonwealth and at no time within said period has this respondent known of any property of said defendant which it could attach or levy on in satisfaction of said judgment. This respondent specifically avers that no part of said judgment, which has been marked to its use, has been paid, but the same with interest from the date it was entered, is justly due and owing to respondent, and this respondent specifically directs the attention of the court to the fact that nowhere in the petition upon which said rule was granted is there any averment on the part of the said Archibald A. Alexander,

defendant, that said judgment or any part of it has been paid." To this, defendant filed a replication, but withdrew it, and submitted the case upon petition and answer. On March 14, 1919, the court below filed an order discharging the rule for non pros. and dissolution. March 25, 1919, defendant filed a petition for an issue, to which an answer was filed and the rule discharged. Later, defendant asked for an order on the use-plaintiff to file interrogatories to the garnishee and, after answer filed, the rule therefor was made absolute. The interrogatories were accordingly issued, and the answers thereto showed the said fund of $11,500 of defendant in the garnishee's hands. Then defendant filed pleas and an affidavit of defense wherein he set up the presumption of payment, as twenty-three years had elapsed since the judgment was entered and attachment issued.

The case went to trial before a jury, and, in addition to offering the records above referred to, plaintiff called William P. Gest, president of the Fidelity Trust Company, who testified he had been connected with the company since 1889 and that no part of the judgment had been paid to the use-plaintiff. He based this assertion in part on his own knowledge and in part on the books and records of the company, and the manner in which its trust business was conducted. His evidence was also to the effect that there had been other trust officers to whom payment might have been made; but, if so, it would have come to his knowledge, except in case of embezzlement. He further testified that the trust company never had knowledge of any property of defendant out of which the judgment could have been collected, and also stated his belief that defendant had resided continuously outside of Pennsylvania. In the latter statement he was corroborated by the fact that the attachment issued in 1895 was returned "nihil habet as. to defendant," and that thereafter defendant brought suit in the United States court at Philadelphia, apparently as a nonresident, and also by his tacit admission of that fact upon

his rule for non pros. of the attachment. The defendant submitted no evidence, and counsel for both sides asked for binding instructions and conceded that the questions involved were for the court, who directed the jury to find for the plaintiff for $10,231.65, being the original judgment and interest. The trial court overruled defendant's motion for judgment n. o. v. and caused judgment to be entered upon the verdict; from which defendant brought this appeal.

In our opinion the case was rightly decided. There was no conflict in the evidence and, by conceding that the case hinged on questions of law, defendant impliedly admitted the credibility of the witness, but challenged the sufficiency of the evidence. The burden of proof was upon the plaintiff, as the judgment was over twenty years old, and the question is, was the evidence as a whole sufficient to overcome the presumption of payment? Where, as here, there is no question of credibility, its sufficiency is for the court: Delany v. Robinson, 2 Wh. 503; Beale v. Kirk, 84 Pa. 415; 30 Cyc. 1295. The nature and strength of such presumption is well stated by Mr. Justice STRONG in Reed v. Reed, 46 Pa. 239, 241, as follows: "That presumption which the law raises after the lapse of twenty years, that a bond or specialty has been paid, is in its nature essentially different from the bar interposed by the statute of limitations to the recovery of a simple contract debt. The latter is a prohibition of the action, the former, prima facia, obliterates the debt. The bar is removed by nothing less than a new promise to pay, or an acknowledgment consistent with such a promise. The presumption is rebutted, or, to speak more accurately, does not arise where there is affirmative proof beyond that furnished by the specialty itself, that the debt has not been paid, or where there are circumstances that sufficiently account for the delay of the creditor." See also Coleman v. Erie Tr. Co., Admr., 255 Pa. 63; Devereux's Est., 184 Pa. 429; and O'Hara v. Corr, 210 Pa. 341. However,

such affirmative evidence may be direct or circumstantial (Second Natl. Bank of Titusville v. Thompson, 44 Pa. Superior Ct. 200), but must make a prima facie case of nonpayment (McDowell v. North Side Bridge Co., 247 Pa. 190), and so convincing as to justify the conclusion that the debt is not in fact paid (Eby v. Eby's Assignee, 5 Pa. 435). In passing upon the sufficiency of the testimony to rebut the presumption of payment, the court must consider the united strength of all the evidence and circumstances, and each case depends largely on its own facts. The presumption of payment is strengthened by each year after the twenty (Richards v. Walp, 221 Pa. 412; Cannon v. Hileman, 229 Pa. 414), so that after thirty years it can only be overcome by clear proof: Peters's App., 106 Pa. 340; Miller v. Overseers of the Poor, 17 Pa. Superior Ct. 159. The presumption of payment is also strengthened by the death of the debtor: Gregory v. Com., 121 Pa. 611; Fidelity T. & Tr. Co. v. Chapman, 226 Pa. 312. Here the evidence of nonpayment is satisfactory and convincing. The judgment was transferred to the use-plaintiff within fifteen months after it was entered and Mr. Gest testified that payment thereafter was not made or it would appear on the company's books, and it does not; also that under its method of business it would have come to his knowledge, and it did not; further, that such payments were made by check drawn to the company's order, and no such was received. True, it might possibly have been paid to another trust officer and embezzled by him. That is the only reasonable theory of payment consistent with Mr. Gest's testimony, and that cannot be accepted in face of the presumption of innocence. There is also the evidence tending to show the continued nonresidence of the defendant and his lack of known property from which the judgment could have been collected; and a cogent reason for the delay was the continued litigation in the federal court, rendering it impossible to prosecute the attachment until its termination in 1917.

In fact, the amount in the hands of the garnishee could not be definitely known until the confirmation of the adjudication in January, 1919. Possibly the litigation was not vigorously prosecuted, if so, no one was more responsible therefor than the defendant who was interested therein and a party thereto.

The conduct of the defendant was inconsistent with the theory of payment. He was in full life and if he had paid the judgment he knew when, how and to whom; he also knew that such payment would end the attachment. Yet, he comes into court not asking that the judgment be satisfied, as he naturally would, under the Act of March 14, 1876, P. L. 7, had he paid it, but praying for a non pros. and a dissolution of the attachment for lack of prosecution. And when the trust company filed a sworn answer accounting for the delay and expressly averring that no part of the judgment had ever been paid, he permitted that averment to stand unchallenged and submitted the question to the court on the pleadings —thereby admitting the truth of the answer. Waiving the question of its conclusiveness as an admission of record, it was evidence tending to rebut the presumption of payment. Having failed in his effort to non pros. and dissolve the attachment, he asked and obtained a rule on the use-plaintiff to file interrogatories and thus to proceed with the attachment; but why proceed with the attachment if it was already dead by reason of payment of the judgment? Defendant has filed in this case, as above stated, petitions and affidavits but has avoided any averment of actual payment of the judgment. In view of his own conduct and all of the evidence, the trial court was amply justified in holding that the presumption of payment had been rebutted.

The opinion of the court below refers to the fact that the defendant, although present in court, failed to testify to the payment of the judgment. Upon reflection, we are of the opinion that the legal aspect of the case was not affected thereby. The burden was upon plaintiff to

overcome the presumption of payment, and the court had to decide the case upon its evidence and not by what defendant, who offered no testimony, failed to prove. If plaintiff made out a prima facie case it was entitled to judgment, otherwise not.

There is no merit in the suggestion that the execution attachment had failed by reason of plaintiff's laches. The statute does not limit the duration of the lien of such writ (see opinion of the late Judge HAWKINS in Wilkinson's Est., 30 P. L. J. [O. S.] 401), and the delay in prosecuting the same was fully accounted for.  Moreover, the order of court refusing to non pros. the attachment is not assigned as error.

The assignments of error are overruled and the judgment is affirmed.

CONCURRING OPINION BY MR. CHIEF JUSTICE BROWN and MR. JUSTICE MOSCHZISKER:

We concur in the majority opinion on the ground that the pleadings offered in evidence contain an unchallenged distinct averment that no part of the judgment in question has been paid.

DISSENTING OPINION BY MR. JUSTICE SIMPSON:

I dissent from the judgment in this case.

The opinion of the majority fairly states the testimony of Mr. Gest when it says his assertion that the debt has not been paid is "based......in part on his own knowledge and in part on the books and records of the company, and the manner in which its trust business is conducted."  As he was but one of a number of employees to whom a payment might have been made, he could not have had personal knowledge except as regards payment to himself, and hence his opinion, based on his analysis of the books, not themselves admissible in evidence for this purpose, could not rebut the presumption of payment to use-plaintiff.

The argument attempted to be built on the presumption of innocence is equally fallacious. It is, of course, possible that the debt may have been paid to any one of a number of use-plaintiff's employees, and lost or stolen by an outside party before return for entry on the books, and hence the presumption of the innocence of those employees would exist without affecting the case in any way. Moreover, the law does not permit one presumption to be the sole basis of another (Douglass v. Mitchell's Executors, 35 Pa. 440; Phila. City Passenger Ry. Co. v. Henrice, 92 Pa. 431, 434; Welsh v. Erie & Wyoming Valley R. R. Co., 181 Pa. 461), and hence a presumption of innocence cannot be made the basis of a presumption of nonpayment. Much less does it permit the presumption of innocence of each one of a number of its employees to be added together to make one general presumption of innocence, and therefrom deduce presumption of nonpayment to it. To apply the presumption of innocence here would wholly destroy this beneficial principle of law, so far as corporations are concerned, for they can act only by agents, can always say all moneys paid to their agents should have been entered in their books, none such appear there, and, hence, under this presumption, it must be presumed the debt has not been paid. No reason exists why corporations should be thus favored; and recent experiences with bank and trust company employees ought to convince use-plaintiff, even if all others remain sceptical, that the presumption of innocence is not so conclusive as to justify the belief that its stockholders or the law can safely rely thereupon in matters of this kind.

Nor does the action of defendant and the court below on the rule to dissolve the attachment for want of due prosecution, affect the question here raised. From its nature this matter had to be decided entirely by the record, without oral evidence to supplement it, unless it was averred defendant requested a delay in proceeding, which is not alleged here. If defendant had produced a

receipt in full he would not have advanced a single step in the determination of whether there had or had not been due prosecution of the attachment; and hence as only those matters which stand in the direct line of a judgment or decree are conclusive or even evidence in later proceedings between the parties (Tams v. Lewis, 42 Pa. 402, 410; Sheble v. Strong, 128 Pa. 315, 322; Maloney v. Bartlett, 172 Pa. 284; Amrhein v. Quaker City Dye Works, 192 Pa. 253), appellant's action in withdrawing his replication, and arguing his rule on the record alone—as he was compelled to do in any event—cannot be an admission or adjudication of nonpayment. Had he replied and admitted the statement, or answered all else and omitted to refer to this, some slight basis for an argument might be found; but failure to answer because an answer would have been useless, as admittedly it would have been here, raises no presumption whatever. It is only when there is a duty to speak that an unfavorable inference is drawn from one's silence. Forgetting this principle, the majority say in one sentence that defendant "permitted that averment to stand unchallenged and submitted the question to the court on the pleadings—thereby admitting the truth of the answer," and then go equally wrong by adding "Waiving the question of its conclusiveness as an admission of record, it was evidence tending to rebut the presumption of payment," that is, that which is wholly immaterial and hence not evidence for any purpose, is still "evidence tending to rebut the presumption of payment": "even the worthy Homer sometimes nods." Moreover, as the court below expressly and correctly ruled this point in appellant's favor at the trial, it became the law of the case for the purpose of this appeal, subject only to review at the instance of use-plaintiff if later it takes an appeal. Doubtless the conclusion by the court below on this point was because, as stated by appellant and not questioned by appellee, that "the court discharged the rule [in order that] plaintiff should have an opportunity to rebut the

presumption arising out of such a lapse of time, and this, as above noted, is what actually occurred." The majority further ask "why proceed with the attachment if it was already dead by reason of payment of the judgment?" The answer is plain: If defendant thought this was possibly the quickest way to get rid of the attachment which locked up his money, he had the right to test it, and his so doing does not properly subject him to criticism from any source.

Nor does defendant's nonresidence, assuming it to have existed all the time, or use-plaintiff's ignorance of assets belonging to him (though for nearly twenty years it knew he was prosecuting the claim which at the end of that period ripened into a decree in his favor), amount to anything, for nonresidence and actual proof of poverty or insolvency, are not even circumstances to rebut the presumption: Kline v. Kline, 20 Pa. 503; Geiger's Est., 14 Pa. Superior Ct. 523, 527.

Nor has the long litigation in the United States courts any bearing on the present issue. It had nothing whatever to do with the judgment here, which would have continued whether or not this debt was paid, and did not stand in the way of use-plaintiff issuing a sci. fa. to revive before the presumption of payment arose, if in fact there had been no payment. This or any other plaintiff could always find a personal excuse for not keeping a judgment alive, by saying it did not know when or how it could be collected, and so waited until something turned up; and this may have caused the majority to think "the evidence of nonpayment is satisfactory and convincing," forgetting that "The inquiry is not what has a moral tendency to persuade the mind, but what has a legal tendency": Douglass v. Mitchell's Executors, 35 Pa. 440, 445.

While it is unquestionably true, "In passing upon the sufficiency of the testimony to rebut the presumption of payment, the court must consider the united strength of all the evidence and circumstances," and not each in-

dividual fact standing alone; this only means that where each piece of evidence by itself falls short of proving the ultimate fact, or any intermediate fact bearing thereon, each may be added to that which precedes and follows, and if all taken together complete the chain of proof of the ultimate fact, its "united strength" is to be considered and not its individual elements. It cannot mean, however, that a series of links, no one of which has been closed, can be joined together by inapplicable presumptions, so as to complete the chain of proof. To illustrate: Piggott and Wright were trust officers of plaintiff, authorized to receive payment of this debt; the burden of proof is on plaintiff to show it was not paid to them: Mr. Gest's testimony does not cover that; neither their carefulness nor integrity was shown; the presumption of innocence does not apply; defendant's nonresidence and plaintiff's ignorance of his having assets are not even circumstances to rebut the presumption of payment; neither the proceedings on the rule to dissolve the attachment nor the litigation in the federal courts have any relevancy to the question; no one of these matters is connected with or supplementary to any other; and yet taken together they are supposed in some unstated way to piece out each other's insufficiencies, and overthrow "this presumption [of payment which] is very strong and is favored in law as tending to the repose of society and the discouragement of 'stale claims'": Kline v. Kline, supra; Porter v. Nelson, 121 Pa. 628, 637. In law as in mathematics, however, five times nothing must ever remain nothing.

Finally, entirely aside from the foregoing, use-plaintiff's attempt to rebut the presumption of payment wholly failed for the reason that there is neither evidence, inference nor presumption covering any part of the period from November 14, 1895, when the attachment was issued by the legal plaintiff, until February 4, 1897, when the judgment was marked to use (every day of which was more than twenty years before February 28, 1919,

when the next succeeding step was taken of record), unless the withdrawal of the replication sur rule to dissolve the attachment, and the action of the court thereon, had some effect on the matter, which, for the reasons heretofore expressed, they clearly had not. If these fifteen months may be left out of consideration, why not fifteen years, or any other longer or shorter period? If they may not, as surely they ought not, then a necessary link in the chain of proof is lacking, and the presumption remains unrebutted.

What has been said disposes of the case; but there is a matter, incidentally referred to, which affects the practice of the courts, and, if not explained, may lead to difficulties in other cases. The majority say "by conceding that the case hinged on questions of law, defendant impliedly admitted the credibility of the witness, but challenged the sufficiency of the evidence." For the purpose of determining the question of defendant's right to binding instructions this was undoubtedly so; but it was not, under our practice, a continuing admission for all purposes. In early days, it was sometimes held, outside of Pennsylvania, that where both sides requested binding instructions it was in effect a waiver of a right of trial by jury, and justified the court—though disagreeing with both parties as to the effect of the evidence —in entering such judgment as in its view the facts warranted. In later years the court so holding has been announcing exceptions to this rule, which need not be considered, however, since the rule itself never found acceptance with us. We have always held that a waiver of a jury trial must be general and clearly expressed; and hence, unless the parties agree otherwise, if the trial judge thinks the evidence does not justify the binding instructions asked for by them, he can only overrule their contentions and submit the issues of fact to the constitutional trier of disputed facts, for not otherwise can we have a "trial by jury [which] shall be as heretofore and the right thereof remain inviolate."

I would reverse the judgment of the court below and enter judgment for defendant non obstante veredicto.

MR. JUSTICE KEPHART joined in this dissent.