## Rachel Humphrey *v.* R. O'Donnell et al.
## Appeal of Crescent Pipe Line Company, Garnishee.

[Marked to be reported.]

*Attachment execution—Payment.*

An attachment execution was issued on a judgment against a contractor, and the company for which the contractor was doing work was summoned as garnishee. At the time the attachment was served an amount in excess of the judgment was due by the company to the contractor, subject however to a claim of forfeiture of deferred payments. After the service of the attachment the company released their claim of forfeiture and paid the money to the contractor, accepting his agreement to pay it out in a certain way, and also accepting from him a bond of indemnity against the attachment. *Held* that the company was liable to the attaching creditor for the amount of the judgment.

MR. CHIEF JUSTICE STERRETT dissented.

Argued Oct. 24, 1894. Appeal, No. 118, Oct. T., 1894, by garnishee, Crescent Pipe Line Co., from judgment of C. P. No. 3, Allegheny Co., Feb. T., 1893, No. 386, on verdict for plaintiff. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ. Affirmed.

Attachment execution. Before McCLUNG, J.

At the trial it appeared that R. O'Donnell had a written contract with the Crescent Pipe Line Co. dated Aug. 5, 1892, for the ditching and burying of a portion of the pipe line of said company between a certain point in Westmoreland county and a certain point in Franklin county, Pennsylvania. Prior to November, 1892, Rachel Humphrey obtained a judgment against O'Donnell, and, on Jan. 12, 1893, caused an execution attachment to be issued thereon and served upon the Crescent Pipe Line Company as garnishee. . Upon the serving of interrogatories on said company, it answered by its president, W. L. Mellon, denying that it had any money due or coming to said R. O'Donnell, and upon the answer issue was joined on the plea of nulla bona.

Plaintiff offered in evidence a bond in $5,000, dated April 17, 1893, signed by defendant as principal and J. M. Keffer as surety, with the following recitals and condition:

" Whereas, the said R. O'Donnell has, under a contract in

writing, dated the 5th day of August, 1892, made between him, the said R. O'Donnell, and The Crescent Pipe Line Co., ditched for and buried a portion of the pipe line of the said The Crescent Pipe Line Co. between Milbank station on the Ligonier Valley Railroad, in Westmoreland county and a pin numbered 1019×25 in Lurgen township, Franklin county, Pennsylvania;

" And Whereas, the question of the amount, if any, due to said R. O'Donnell under said contract, is unsettled, and negotiations are now pending looking to an amicable settlement of all differences between said parties;

" And Whereas, the said The Crescent Pipe Line Co., has in its hands certain moneys amounting to twenty-four hundred forty-seven dollars and fifty-eight cents, retained by it in its hands under a claim for forfeiture, which claim it now proposes to release, and pay over said money to said O'Donnell upon the condition that he shall forthwith apply the same to the payment of claims against him along the line of said work so far as said money will go;

" And Whereas, the said R. O'Donnell has agreed and does hereby agree to accept said money for said purpose, and on account of his claim against said company, but reserving the question as to the amount of moneys coming to him in the hands of said company until settlement is made, and has agreed and does hereby agree further that all other claims against him for or on account of said work done for him under said contract will be paid within a reasonable time after final settlement is made with said company, either by compromise or litigation, and out of moneys paid to him by said The Crescent Pipe Line Co. after said compromise or litigation, so far as said money will go.

" Now the condition of this obligation is such that if the said R. O'Donnell shall and will faithfully comply with his foregoing agreement, and shall and will at once proceed, out of the said moneys now paid to him as aforesaid, to pay all claims against him along the line of said work so far as said money will go, and within a reasonable time after settlement with said company, by compromise or litigation, and the payment to him by said company of the amount of said compromise, shall and will also pay all other claims or demands against him, said

O'Donnell, for or on account of the said contract and the work done thereunder, so far as the money so paid shall go, and shall also save and keep harmless the said company from any attachments against it, especially one in the name of Rachel Humphrey, issued out of the Court of Common Pleas, No. 3, of Allegheny county, Pennsylvania, at No. 386, of February Term, 1892, then this obligation to be void, otherwise to be and remain in full force and virtue."

W. L. Mellen, a witness for defendant, was asked: " Q. I wish you would state whether anything passed between you and Mr. O'Donnell by which he asked you or your agent to go and pay these claims that are not mentioned in that account, instead of paying the money to him, for the purpose of avoiding difficulty with persons who had done work." Objected to. By the Court: What do you propose to show? By Mr. Carpenter: I propose to show that this money was not in fact paid to Mr. O'Donnell as Mr. O'Donnell's money, but it was a voluntary act upon the part of the company, not on the ground of any indebtedness, but merely for the purpose of avoiding difficulty with persons who had done work for Mr. O'Donnell, that it was in the nature of a gift from the company. " Q. Under the contract which has been offered in evidence, the work was to be completed in a given time, and a penalty was attached for a failure to do so. Now, what made up this $2,400 ? " Objected to, because it is an offer to show something in reference to this $2,400 outside of the agreement in reference thereto, which is in writing. By Mr. Carpenter: I propose to prove by the witness on the stand that the $2,447.58 paid by the Crescent Pipe Line Company to Mr. O'Donnell after the attachment, was not paid upon any admission of liability, but was a voluntary act upon the part of the company, as a donation to Mr. O'Donnell, to enable him to pay pressing claims against him personally along the pipe line where he had his contract. Objected to as incompetent and irrelevant, especially because the contract or agreement is in writing, and the very fact sought to be proved appears in the writing itself. By the Court: As I understand the offer it is not to show what was due to him under the contract but to show that they paid this money because they waived the claim that they had against him—the certain forfeitures for delay, probably upon the con-

ditions substantially as recited in the bond.   I think that taking the recital of the bond as proven it would still not be a defence, and I will, therefore, sustain the objection.   Bill sealed for defendant.  [1]

Selwyn Taylor, a witness for defendant, was asked: " Q. State whether you made a calculation showing the average depth of that pipe, taking its entire length, as ditched by Mr. O'Donnell.   A. I did."   Counsel· for plaintiff request an offer of what is proposed to be proved.   By Mr. Carpenter: I propose to show by the witness on the stand that Mr. O'Donnell did not lay the pipe as a whole, the required depth, that is, he did not ditch the required depth, that the average of his whole work from end to end is less than the depth called for by the contract.   Objected to, for the reason that the measurements as to extra depth were referred, by Mr. O'Donnell and the Crescent Pipe Line Company, to arbitrators, who have made a report which is binding upon both parties, under the terms of the agreement.   Objection sustained.   Bill sealed.  [2]

By Mr. Carpenter: In the light of the contract specifying the depth to which this pipe line is to be buried, I propose to prove by the witness on the stand that while it is true that allowing for the extra depths ascertained by the referees, there would be the sum of $395.67 coming to Mr. O'Donnell, that the work as a whole was not done according to contract, and the pipe was not laid to the average depth required by the contract; this, for the purpose of setting off or defeating any claim which the plaintiff may have for extras.   Objected to as incompetent and irrelevant.   By the Court:· If the offer were to prove any specific failure to perform any part of the contract and damages therefrom, we would allow it; but as we understand it, it is only to show that the calculation on this report shows that the average depth would not amount to the depth required by the contract; and inasmuch as the question of the depth was not submitted to these arbitrators, a calculation of that sort would not be binding upon either party.   It cannot be made the basis of testimony.   By Mr. Carpenter: " Q. How much of the line did you measure ?   A. We made the tests over the entire contract of Mr. O'Donnell at regular intervals.   Q. Of how many feet ?   A. Every four hundred feet.   Q. You made your calculation for the entire length of the line ?   A. Yes, sir.   By

Mr. Shields: Q. And that is all that appears in this report? A. Nothing but the extra depths appear in our report. We didn't report those that were under depth. By Mr. Carpenter: Q. But you kept a record of that? A. No, sir. By the Court: Q. You didn't make all these tests yourself? A. I was with the party making the tests. Q. Were you a party to every test that was made? A. Well no, I don't think that any one of the commissioners was present at all of them. We probably missed a few hours several times on some of the tests. There were five of us keeping notes on the line, and part of our notes we filled in afterwards from the others. There were at least three present at all times of the commissioners, and our notes agreed on the subject. By the Court: I do not think it is a proper method of proving a failure to perform the contract, especially in the face of the fact that inspectors were there who were to pass upon the matters at the time the pipe was laid. We will have to sustain the objection, and seal a bill for the defendant." [3]

The court charged as follows:

" [In this case the question for you to determine is whether there is enough money in the hands of the defendant, the garnishee, The Crescent Pipe Line Company, to satisfy the judgment of the plaintiff upon which the execution attachment is issued, which was due to O'Donnell at the time the execution attachment was served or subsequently thereto; or if there was not enough to satisfy that judgment, then, how much there was. That is, if there was enough to satisfy the judgment, then you simply find that there was that much money, the amount of the judgment, in the hands of the garnishee.] [4] If there was less, you specify the amount.

" The plaintiff here gives a statement of the amount due upon the judgment as $785.50. If you find that there was that much, at least, due to O'Donnell, subject to this attachment, that is, in the hands of this company at the time the attachment was served or subsequently thereto, owing to him for this work, then you will find a verdict for that amount; that is, you will find for the plaintiff, and that there is in the hands of the defendant company, subject to the attachment, $785.50. If you find less than that, you will specify the amount. If you find more, you need not trouble yourself in figuring as

to the amount. It appears in this case that, after the execution attachment was served, there was an amount of $2,447.58 paid, in some sense at least, on account of this contract, to O'Donnell; and it also appears upon a calculation upon the report of these referees that there would be some $395 in addition.

" [It is alleged that this $2,447.58 was paid upon certain conditions—that it involved a waiver of claims which they had for forfeitures or for offsets against O'Donnell. The payment, however, is an admission, prima facie, of indebtedness, and it is admitted in the case that it was a payment upon the contract, and although there is a recital in the indemnifying bond which is given and which is the contract under which it was paid, that it was because of waivers of the counterclaims, and upon conditions, yet the recital of the fact that there had been certain forfeitures or that there were certain counterclaims is not proof of it, and the payment having been made, the burden remains upon the defendant of showing that it was not due. That has not been shown.] [5]

" [The evidence which was offered we think was not sufficient even if the proof was given as the offer was made, to show that this money was not due under the contract.] [6]

" [Taking this proof, then, as it stands, there is evidence against the defendants, in this payment, of the fact that they owed on account of this contract an amount greater than the amount of this judgment; and if you believe that evidence, you can probably render a verdict in favor of the plaintiff, and against the garnishee, and that there is in its hands the sum of $785.50.] [7] If you find against the defendant, and that there was money in its hands at the time of the service of the attachment, to the amount that you determine upon, you will render your verdict."

. The jury found a verdict for plaintiff for " $785.50 in hands of garnishee, subject to attachment." The court entered judgment against the garnishee, " and that plaintiff have execution of so much of the debt due by the garnishee to R. O'Donnell, one of the defendants, and attached in its hands, as may satisfy the judgment of the plaintiff and costs ; and if the garnishee refuse or neglect, etc., the same to be levied " etc. The garnishee appealed.

*Errors assigned* were (1–3) rulings on evidence; (4–7) instructions; quoting the bills of exception and instructions.

*J. McF. Carpenter*, for appellant.—The garnishee was not permitted to prove the fact, well known to defendant and his attorney, that this money was advanced, not because of any admission of indebtedness to defendant but for the purpose of paying poor laborers and others, who had either worked for defendant on the pipe line or furnished supplies, boarding, etc., to him and his laborers.

The form of the verdict is wrong, and, of course, the instructions to the jury as to what they should or might find, are erroneous: Act of June 13, 1836, § 58, P. L. 583; Poor v. Colburn, 57 Pa. 415.

*J. M. Shields, G. W. McLane* with him, for appellee.—The bond taken by the Pipe Line Co. from defendant recognizes that the company would be compelled to pay him an amount in addition to that paid him at the execution of the bond.

The company has redress. It can proceed on the bond taken to protect itself from liability on this attachment.

The offer in the first assignment was to prove what the bond itself set out fully. It was not sufficient to change a written instrument.

The form of the verdict was proper: Flanagin v. Witherill, 5 Whart. 280; Bonnafon v. Thompson, 83 Pa. 460.

OPINION BY MR. JUSTICE GREEN, Jan. 7, 1895:

The bond of indemnity given by the defendant O'Donnell with surety, to the Crescent Pipe Line Company, contains the following recital, " And whereas the said The Crescent Pipe Line Company has in its hands certain moneys amounting to twenty four hundred forty seven dollars and fifty eight cents, retained by it in its hands, under a claim for forfeiture, which claim it now proposes to release, and pay over said money to said O'Donnell upon the condition that he shall forthwith apply, the same to the payment of claims against him along the line of said work so far as said money will go."

It is simply impossible to regard this recital as anything less than an absolute assertion that at the date of the bond, April 17,

1893, the Crescent Pipe Line Company had in its hands $2,447.58 under a claim for forfeiture which claim that company proposed to release, and pay over the money to O'Donnell upon condition that he would pay it over at once in payment of claims against him along the line of the work he had been doing for the company on a contract which was previously recited in the bond. In the next clause of the bond O'Donnell agreed to accept the money for the purpose mentioned, "and on account of his claim against said company," but reserving the question as to the amount of moneys coming to him in the hands of the company until settlement was made, and agreed to pay all other claims against him for or on account of the work done for him under the contract.

The condition of the bond was that if O'Donnell paid, "out of the said moneys now paid to him," all claims against him along the line of the work, "and shall also save and keep harmless the said company from any attachments against it, and especially one in the name of Rachel Humphrey issued out of the Court of Common Pleas No. 3, of Allegheny county, Pennsylvania, at No. 386 of February Term, 1892, then this obligation to be void, otherwise to be and remain in full force and virtue."

The bond was delivered to the company and the $2,447.58 paid to O'Donnell, and on the same day an agreement in writing was executed between O'Donnell and the company, to refer to five persons the question as to how much was coming to O'Donnell for extra work on his contract with the company. These persons subsequently made their report, the precise result of which does not appear in the paper-books. But the president of the company, W. L. Mellon, being examined, testified that, in addition to the $2,447.58, the company owed O'Donnell "about $395," on the basis of the report of the referees, or if a certain sum of $125.85 was allowed as extra work the amount still owing would be $521.52. Now the attachment in execution in this case had been issued and served in January, 1893, and the president, Mr. Mellon, testified that he knew of the attachment at the time of its service, and that the money, $2,447.58, was paid after the attachment was served and while it was pending. In addition to that when the company paid that money they took a bond of indemnity from O'Donnell indemnify-

ing them against this very attachment. So that it appears of record that, after the attachment was served, and with a full knowledge of it, the company, having in its hands $2,447.58 for the account of O'Donnell for work done under his contract unless it was forfeited, but which claim of forfeiture they released, paid him that money, accepting his agreement to pay it out in a certain way, and a bond of indemnity against this particular writ of attachment in consequence of their payment to him of this money. As to these fundamental facts there was no dispute. The offers of testimony which were rejected could not possibly have mitigated the force or the legal effect of these facts. If the company made a wrong payment, or an overpayment, to O'Donnell, they can resort to their bond of indemnity but they cannot defeat the effect of the attachment by paying out money accruing under their contract with him, after the service of the writ. Nor can they engage this plaintiff in a contest over the whole merits of their controversy with O'Donnell, in view of the undisputed fact that they paid to O'Donnell much more money than the whole amount claimed in the attachment, after the writ was issued and served. Whether they chose to regard it as a gift is a matter of no moment. It was money in their hands on account of their contract with O'Donnell, held only under a claim of forfeiture which they released, and as such it was unquestionably subject to the attachment of his creditor. The assignments of error are all dismissed.

Judgment affirmed.

MR. CHIEF JUSTICE STERRETT dissented.