Shipman *v.* Seiwell et al., Appellant.

Argued October 29, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUNNINGHAM, BALDRIGE and WHITMORE, JJ.

*Charles M. Clement,* and with him *J. Simpson Kline,* for appellant, cited: Chute v. Wisconsin Chemical Co., 185 Federal 115; McCormick v. Wheeler, 36 Ill. 114; Duffey v. Houtz, 105 Pa. 96.

*R. H. Klein* of *Knight, Taggart, Klein and Reich,* for appellee, cited: Paul v. Johnson, 9 Phila. Reports 32; Citizen's Savings Bank v. Boswell, 127 Ky. 21, 104 S. W. 1014; Lloyd v. McCaffrey, 46 Pa. 410; McGeary v. Huff, 31 Pa. Superior Ct. 401.

OPINION BY CUNNINGHAM, J., February 27, 1931:

Appellant, The First National Bank of Sunbury, was named as garnishee in an attachment execution issued by Annie E. Shipman, appellee, and has taken this appeal from a judgment entered against it in the court below in the sum of $131.25, with interest from January 15, 1930, upon its answers to certain interrogatories. The defendant in the judgment was designated therein at the time of its entry as Howard E. Seiwell and so named in the execution. The case was disposed of upon rule and answer and the ad-

ditional facts appearing of record. Through the inadvertence of counsel for appellee, the defendant was not properly named when the judgment was entered and the practical question involved seems to be whether she has thereby missed an opportunity to attach certain funds of her real debtor in the hands of appellant, or whether, under all the circumstances hereinafter recited, appellant failed to exercise proper diligence and caution and must therefore pay the amount it would have been liable for if the debtor had been properly named in the judgment and writ.

The controversy arose out of these facts: Under date of December 13, 1929, Annie E. Shipman leased a store room to Howard W. Seiwell for fifteen and one-half months, at a monthly rental of $125, payable in advance; in executing the lease the lessee signed his name "H. W. Seiwell" but he is referred to in the first paragraph as Howard W. Seiwell. The rent due January 1, 1930, was not paid and, by virtue of a warrant of attorney contained in the lease, counsel for Annie E. Shipman on February 20, 1930, undertook to confess judgment against him for $131.25, the instalment of rent, together with an attorney's commission of $6.25. This judgment, however, was entered against "Howard E. Sciwell" and on February 25th an attachment execution was issued in which The First National Bank of Sunbury was named as garnishee; the sheriff served the garnishee that day and made a return of nihil habet as to Howard E. Seiwell. On February 28th the garnishee answered that it did not have a bank account with Howard E. Seiwell, had no money in its hands belonging to him and was not indebted to him in any manner. A few days later, March 13th, the court below, upon petition of plaintiff's counsel setting forth that "a clerical error was made" in entering the judgment against Howard E. Seiwell, made an order amending the judgment by changing

the name of the defendant to Howard W. Seiwell and directed the prothonctary to make the necessary changes on the appearance and judgment dockets; upon a' similar petition, the praecipe and writ of attachment were amended in the same way and leave granted the plaintiff to file new interrogatories—all without notice to the defendant or the garnishee. On March 15th counsel for appellant accepted service of the new interrogatories, filed that day, and this was the first notice it had of the amendments. In its answer to the new interrogatories, appellant stated, in effect, that Howard W. Seiwell had a checking account with it, in which there was a balance in his favor of $61.04 on February 25th, the date upon which the attachment against Howard E. Seiwell, was served; that the account changed from time to time through deposits and withdrawals between February 25th and March 15th, during which period the sum of $218 belonging to Howard W. Seiwell passed through appellant's hands; and that the balance to his credit on the day the new interrogatories were filed was $2.08, which it was holding under the attachment. It was denied that any funds deposited by Howard W. Seiwell in its bank had been attached prior to March 15th.

We agree with the court below in the view that, if the service of the attachment upon the garnishee on February 25th bound the funds of Howard W. Seiwell then in its hands, it would also bind those subsequently deposited, and appellant had in its possession on March 5th enough of his money to satisfy the judgment. The case therefore turns entirely upon the question whether the service of the attachment on February 25th bound deposits of Howard W. Seiwell in garnishee's bank. Upon the theory that it did, appellee obtained a rule for judgment against the garnishee ''for the amount admitted in its answers to interrogatories to be due by it to defendant.'' Appellant replied that the only

amount admitted was the small balance of $2.08 and averred that it had never been served with an attachment upon the funds of Howard W. Seiwell prior to March 15th. The answer then continued: "At the time such attachment was made and the respondent, The First National Bank of Sunbury, summoned as garnishee, your said respondent carefully inspected the name on the deposit card of the said Howard W. Seiwell and carefully ascertained that it had no account with Howard E. Seiwell; and, fearing there might be some error, an examination was made of the appearance docket, where it was found the defendant named in the original judgment on which the attachment was served was Howard E. Seiwell, as were the attaching papers and the summons to the garnishee. The said garnishee had no funds, assets or estate belonging to the said Howard E. Seiwell and after inspection of the record so as aforesaid, answer was made by the said garnishee," to that effect, and further that, "upon notice given to the solicitor of the said bank that the intended person was Howard W. Seiwell, the fund then in the hands of said garnishee was held and is continued to be held for the use of the said attaching plaintiff, Annie E. Shipman."

After argument, the court below decided that the garnishee had not exercised the care and diligence required by the circumstances and entered judgment against it for the amount of appellee's judgment, with interest and costs. The material portion of the opinion reads: "The fact that the attachment execution was issued and served upon the garnishee, and that the name of the defendant as asserted in the writ differs only from the name of the depositor with respect to the middle initial, was a warning that the defendant and the depositor were the same person. While it is true the counsel for the garnishee examined the appearance docket and the judgment index to dis-

cover the name in which the judgment had been taken, yet we are far from being convinced that in so doing the garnishee discharged its duty under the law. A mere inspection of the instrument attached to the plaintiff's statement as the basis of claim, or an inquiry of counsel for the plaintiff, practicing in the same city in which the bank was located, would have disclosed to the garnishee the identity named in the writ. This information could have been had from either source without violating any obligation to its depositor. The suggested examination or inquiry would have identified the defendant in the writ as the depositor whose account was being inquired into by the plaintiff. The failure to exercise this caution fixes the responsibility of the garnishee not only as to the amount of money in the hands of the garnishee at the time of the service of the original attachment execution, but as to all moneys which subsequently came into its hands to the amount of the plaintiff's claim: Bremer v. Mohn, 169 Pa. 91; Glazier v. Jacobs, 250 Pa. 357; Somerset Coal Co. v. Diamond Steel Co., 224 Pa. 217.''

The errors specified in the assignments are the allowance of the amendments without notice and the entering of the judgment.

The court below correctly stated the general principles applicable to the present situation—that a garnishee does not stand in the same position as a subsequent purchaser or judgment creditor but is a party to the litigation and, as such, is required to exercise a high degree of care in protecting the rights of the other parties until a legal result has been regularly reached—but we are not convinced that those principles have been properly applied to the conceded facts. This is not a case of the change of a letter in the spelling of a name as ''Johnson'' for ''Johnsen,'' ''Heckman'' for ''Hackman,'' or the omission of a

middle initial (Paul v. Johnson, 9 Phila. Repts. 32; Bergman's Estate, 88 Pa. 120), or the use of an initial instead of the first name in full, but of the use of a misleading and erroneous middle initial. It may be granted, however, that there was sufficient similarity between the names to place upon the garnishee the duty of making such inquiry as would be reasonably expected and proper in view of the fact that it was a bank and under certain obligations to its depositors. For the purposes of this case, it may also be conceded that as the facts were uncontroverted the determination of the standard of duty, or measure of care, incumbent upon the bank was a matter of law for the court. That its officers recognized their obligation to investigate before answering is evident from the fact that they sent their solicitor to the prothonotary's office to ascertain whether the writ was in accordance with the judgment as entered. Examination of the appearance and judgment dockets disclosed that the attachment had been issued upon a judgment against Howard E. Seiwell. The learned president judge of the court below held this was not sufficient, that the bank's solicitor should have required of the prothonotary the production from the safe (where such instruments were preserved) of the original lease and then examined and compared the signature of the lessee for the purpose of ascertaining whether counsel for the lessor had correctly confessed the judgment. In our opinion this was prescribing an unreasonable standard of duty under the facts in this case —and each case of this kind must be decided upon its own facts. What we have just said applies equally to the suggestion that inquiry should have been made of counsel for plaintiff. That suggestion seems to be that the garnishee should have assumed that plaintiff's counsel might have made a mistake in the performance of his duties; ordinarily, the presumption

would be to the contrary. There is no suggestion that garnishee's officers had knowledge of the business transactions between plaintiff and defendant out of which the judgment arose. Nor is it of any assistance, when considering the legal proposition here involved, to look back and say that if the bank's solicitor had examined the original lease he would have discovered that plaintiff's counsel had made a mistake; it is equally true that if her counsel had properly compared the lease with his confession of judgment thereon he would have discovered his own mistake. There was, of course, no wilful misconduct upon either side, and the only question is whether the garnishee exercised such care, diligence and caution as the circumstances demanded. We think it did and that judgment should not have been entered against it for more than $2.08. This conclusion renders it unnecessary to consider the assignments charging that the amendments were applied for and allowed in violation of the rule of the court below requiring notice of the time and place of making all motions.

The judgment as entered is reversed and the record remitted with instructions to enter judgment against the garnishee in the sum of $2.08, with interest from March 15, 1930.