## Frazier et al., Exrs., Appellants, *v.* Berg and (Greenfield, Appellant).

318

Argued December 4, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Morris Wolf,* of *Wolf, Block, Schorr & Solis-Cohen,* for garnishee.—Appellee's contention is that an attachment does not bind any funds of the defendant coming into the garnishee's hands after the garnishee files its answers to interrogatories and its plea: Kennedy v. Schleindl, 290 Pa. 38; Silverwood v. Bellas, 8 Watts 420; Franklin F. Ins. Co. v. West, 8 W. & S. 350; Sheetz v. Hobensack, 20 Pa. 412; Raiguel & Co. v. McConnell, 25 Pa. 362; Mahon v. Kunkle, 50 Pa. 216; Hays v. Ins. Co., 99 Pa. 621; Bremer's Sons v. Mohn, 169 Pa. 91; Bizot v. Audenried, 14 Pa. D. & C. 287; First Nat. Bank v. Trainer, 209 Pa. 387; Glazier v. Jacobs, 250 Pa. 357.

Our conclusions in this case are as follows:

First, as the payments of $10,000 and $7,500 made by Berg to Greenfield were made after the answers were filed and the plea pleaded, the attachment did not bind them.

Second, if the attachment was competent to bind them, it did not bind them in this case because these payments were not free money of Berg which he could have recovered from Greenfield, but were properly retained by Greenfield. Berg made the payments to Greenfield to apply on his obligations to Greenfield, and those obligations included the overdue $25,000 note given July 30, 1928, and the $12,500 loaned January 28, 1929.

The one cardinal principle of law arising in every case of an attachment execution is that an attaching creditor's rights cannot rise higher than the rights of the defendant, and the liability of the garnishee to the attach-

ing creditor is exactly the same as its liability to defendant: Austin-Nichols Co. v. Trust Co., 289 Pa. 341.

There.is no dispute either as to the facts or the law in connection with the item of $2,727.70 in the Franklin Building account, and we therefore respectfully submit that the lower court was clearly in error in entering judgment against Greenfield for this sum.

The whole question is whether the agreement between the building associations and Berg constituted an appropriation of the funds in the possession of Greenfield so that Greenfield held them in trust for specific purposes, and Berg could not have withdrawn them from Greenfield.

Where the income has been received by the broker under an agreement between the owner, a mortgagee, and the broker, that the income from the property shall be appropriated to the specific purpose of meeting operating expenses and carrying charges, the fund is a trust fund which neither the owner of the property nor the real estate agent can divert from the specified purpose: Willis v. Curtze, 203 Pa. 111; Reichner v. Reichner, 237 Pa. 540; Austin-Nichols Co. v. Trust Co., 289 Pa. 341; Wyoming Con. Co. v. Trust Co., 298 Pa. 582; Benedict & Eberle Co. v. Hollman, 68 Pa. Superior Ct. 155; Dunn v. Brown, 89 Pa. Superior Ct. 370.

No one of the three items for which the trial judge directed the jury to bring in a verdict against Greenfield could properly be recovered from Greenfield and judgment should be entered for Greenfield in spite of the verdict.

*Philip Price,* with him *Charles Myers* and *Barnes, Biddle & Myers,* for Frazier et al.—The attachment bound all funds of the defendant in the garnishee's hands from the date of service to the date of trial: Raiguel v. McConnell, 25 Pa. 362; Adkins v. Poth, 286 Pa. 555; Benners v. Buckingham, 5 Phila. 68; German S., etc., Bank v. Braddock, 19 Pa. C. C. 18; Gilmore v.

Alexander, 268 Pa. 415; Mullen v. Maguire, 1 W. N. C. 577; Excelsior Brick Co. v. Gibson, 21 W. N. C. 32; McClure's Est., 26 Pa. Dist. R. 892; Franklin F. Ins. Co. v. West, 8 W. & S. 350; Sheetz v. Hobensack, 20 Pa. 412; Mahon v. Kunkle, 50 Pa. 216; Hays v. Ins. Co., 99 Pa. 621; Bremer v. Mohn, 169 Pa. 91; Somerset Coal Co. v. Steel Co., 224 Pa. 217; Frank v. Kurtz, 4 Pa. Superior Ct. 233; Mechanics' Nat. Bank v. Buckman, 56 Pa. Superior Ct. 285, 293; Pottash v. Oil Co., 274 Pa. 384; Shipman v. Seiwell, 101 Pa. Superior Ct. 95; Humphrey v. O'Donnell, 165 Pa. 411; American Surety Co. v. Construction Co., 264 Pa. 193; Butler Co. Nat. Bank v. MacMullen, 292 Pa. 556.

The garnishee had no interest in the $10,000 received on July 12, 1929, until the maturity of the renewal note, on which it was an endorser, and had defendant called upon the garnishee to return the money before that date, it would have been obliged to do so: First Nat. Bank of Scranton v. Higbee, 109 Pa. 130; Golden State, etc., Inc., v. Bank, 6 Pa. D. & C. 286.

Until, therefore, there was an actual appropriation of the money to the purpose intended, which could not, and did not, take place until some two weeks later, the fund became subject to the attachment: Johnson v. Ogilbee, 2 Phila. 79; Balthaser v. Bitner, 61 Pa. Superior Ct. 611.

Interest is recoverable from a garnishee who resists payment: Singerly v. Woodward, 8 W. N. C. 339; Jones v. Bank, 99 Pa. 317.

The evidence relating to the $25,000 note was inadmissible: Reed v. Penrose, 36 Pa. 214; Allen v. Bank, 57 Pa. 129; McDuffee v. Rea, 13 Pa. C. C. R. 261; Bindley v. Pittsburgh, 64 Pa. Superior Ct. 371; Small v. Jones, 8 Watts 265.

The garnishee asserts the right to claim credit, as against plaintiffs, of sums expended by it for defendant's account subsequent to the attachment. This cannot be done. Only such obligations can be so set off as were

incurred by the garnishee prior to the attachment and were presently due when the attachment was served: Pennell v. Grubb, 13 Pa. 552; Roig v. Tim, 103 Pa. 115; Benni v. Bank, 28 Pa. Dist. R. 1039; Schiff v. Schindler, 98 Pa. Superior Ct. 207.

Under the agency so created, the money that came into the garnishee's hands in the form of the rents which it collected was defendant's money. The garnishee, under the authority given by defendant, could expend the money for operating expenses and carrying charges, but until the money so collected was disbursed it belonged to defendant and was subject to his order: First Nat. Bank v. Higbee & Co., 109 Pa. 130; Golden State Fruit Distributors, Inc., v. Bank, 6 Pa. D. & C. 286; State Island v. Trust Co., 41 App. Div. 321.

It necessarily follows that any order of defendant, subject only to the garnishee's right to commissions, would have to be honored by the garnishee, and the garnishee could not resist the demands of an assignee of defendant, whether the assignment had been the voluntary act of defendant or had been an assignment by operation of law: Baldwin's Est., 4 Pa. 248.

There is clearly no such certainty of terms in the oral arrangement, made by defendant and the garnishee, as is required to create an equitable assignment: Christmas v. Russell, 14 Wall. 69. Nor can that oral arrangement be construed as giving the garnishee any interest in the premises. As such it would be unenforceable because not in writing: Morrish v. Price, 293 Pa. 169.

The plea filed by the garnishee in this case was nulla bona, and the answers to the interrogatories were to the same effect. Thus the only issue in the case that could properly have been considered by the court was the amount of money in the garnishee's hands at the time of the attachment, or thereafter received by it, either from defendant or for his account: Reed v. Penrose, 36 Pa. 214; Allen v. Bank, 57 Pa. 129.

OPINION BY MR. JUSTICE SCHAFFER, February 3, 1932:

There is an important legal question to be passed upon in these appeals. We will first settle it and having done this will apply the principle announced to those facts of the controversy to which it is pertinent and then take up the other questions.

The proceeding is an attachment execution. From the judgment entered both the plaintiffs and the garnishee appeal. The vital legal point at issue is this: Does an attachment execution bind all funds of the defendant coming into the hands of the garnishee up until the time of trial or does it grasp only those received up to the time when answers to interrogatories are filed or plea is entered?

Most admirable and complete briefs discussing this question have been laid before us by the able advocates for each of the contending parties who argued the case at our bar, but we think it is not necessary to follow in this opinion the lines of research which they pursued or to discuss the many cases which they have skillfully digested and commented upon, because what we are now, to do is to lay down a rule gathered from all the cases which can be properly applied to the pending one, and which may serve as a guide in the future for attorneys and courts in cases of similar character.

Authority can be found for the proposition that the only funds in the hands of a garnishee which are bound by an attachment execution served upon him, are those which were in his hands when he answered the interrogatories addressed to him or when he pleaded, nothing which he received after answers or plea (note 1); other rulings determine that everything in his possession up

1. Franklin Fire Ins. Co. v. West, 8 W. & S. 350; Silverwood v. Bellas, 8 Watts 420 (overruled on other grounds, Kennedy v. Schleindl, 290 Pa. 38); Raiguel & Co. v. McConnell, 25 Pa. 362; Bizot v. Audenried, 14 Pa. D. & C. 287; German Savings & Deposit Bank v. Braddock Union Planing Mill Co., 19 Pa. C. C. 18.

to the time of trial is caught by the attachment (note 2) ; and others leave the question in doubt (note 3). The relevant statutes give at least some color to the conclusion that the legislative intent was that everything should be bound which comes to the garnishee up to the time of trial (note 4).

---

2. Mahon v. Kunkle, 50 Pa. 216; Somerset Coal Co. v. Diamond State Steel Co., 224 Pa. 217; Mechanics's Nat. Bank v. Buckman, 56 Pa. Superior Ct. 285; Sweeting v. Wanamaker, 4 Pa. Dist. 245; McClure's Est., 26 Pa. Dist. 892; Littletown Savings Inst. v. Corwell, 20 Pa. C. C. 145; Mullen v. Maguire, 1 W. N. C. 577; Andress v. Lewis, 17 W. N. C. 270; Excelsior Brick Co. v. Gibson, 21 W. N. C. 32.

3. Sheetz v. Hobensack, 20 Pa. 412; Hays v. Lycoming Fire Ins. Co., 99 Pa. 621; Humphrey v. O'Donnell, 165 Pa. 411; Bremer's Sons v. Mohn, 169 Pa. 91; Glazier v. Jacobs, 250 Pa. 357; Butler Co. Nat. Bank v. MacMullen, 292 Pa. 556; Rankin v. Culver, 303 Pa. 401; Frank v. Kurtz, 4 Pa. Superior Ct. 233; Shipman v. Seiwell, 101 Pa. Superior Ct. 95; Importers, etc., Bank v. Lyons, 8 Pa. Dist. 675; Benners v. Buckingham, 5 Phila. 68; Griffith v. Gillardon, 1 Chester Co. 194.

4. Act of 1705, 1 Smith's Laws 45, 46: "And if an attachment [foreign] shall be made for goods or effects, and the garnishee plead he had no goods or effects in his hands at the time of the attachment, or at any time after, and the plaintiff prove the contrary, the jury......shall......say what goods or effects they find in the garnishee's hands."

Act of September 28, 1789, 2 Smith's Laws 502, 503, provides that in foreign attachment the garnishee shall answer "touching the goods......effects and credits......in his......possession ......or from him......due and owing, at the time of the service of such writ or writs of attachment, or at any other time."

The Foreign Attachment Act of June 13, 1836, P. L. 568, section 55, provides that the garnishee shall answer "touching the estate and effects of the defendant in his possession......at the time of the service of such writ, or at any other time......" Also (section 50): "The goods and effects of the defendant in the attachment, in the hands of the garnishee, shall, after such service, be bound by such writ......" If the proceeding is by scire facias, now obsolete (section 58), "the jury shall find what goods or effects, if any, were in the hands of the garnishee at the time the attach-

In our opinion, under modern conditions with the reasons for issues raised by pleas having largely ceased to exist, when the tendency in litigation, as in everything else, is in the direction of saving time and disposing of controversies in a single proceeding, if this can be accomplished and justice be done, the rule should prevail that such process binds all property belonging to the defendant or money due him, in the hands of a garnishee, which the latter receives up to the time of trial, and we so announce our ruling. Plaintiffs, therefore, were entitled to have included in their verdict all sums coming into the garnishee's hands and owed by him to defendant up to the date of trial.

The attachment was served on the garnishee January 2, 1929, and it filed answers to interrogatories on January 21, 1929. The court below ruled that the attachment bound nothing coming to the garnishee's hand after the latter date and accordingly concluded that it did not bind a sum of $10,000 received from defendant July 12, 1929, and another sum of $7,500 likewise received July 14, 1930, both before trial. We think this general ruling erroneous, although warrant may be found for it in some of the cases. We are not at this point deciding, however, whether these particular sums were attachable.

As to the two amounts named, the one of $10,000 and the other of $7,500, the situation, generally speaking, as we understand its complications, is this: On July 30,

---

ment was executed as aforesaid or, afterwards, and also the value thereof."

The Attachment Execution Act of June 16, 1836, P. L. 755, section 35, provides: "In the case of a debt due to the defendant, or of a deposit of money made by him, or of goods or chattels pawned, pledged or demised, as aforesaid, the same may be attached and levied in satisfaction of the judgment, in the manner allowed in the case of a foreign attachment......" It also provides (section 37): "From and after the service of such writ.....all debts..... due to defendant......shall remain attached in the hands of such corporation or person, in the manner heretofore practiced and allowed in the case of foreign attachment."

1928, the defendant, Berg, gave a note to the order of Publicker Realty & Holding Company, payable in four months, for $25,000, money due by him to it. The note was endorsed by Greenfield & Co. and by it discounted with the Metropolitan Trust Company. This note was not paid at maturity and Berg gave a series of renewal notes endorsed by the Publicker Realty & Holding Company and by Albert M. Greenfield & Co. One of the series was unpaid at the date of the levying of the attachment, and, at its maturity, the garnishee applied on account of it the $10,000 which it had received from the defendant. Of this series of notes, only the third was payable to Albert M. Greenfield & Co., but they were all discounted at the Metropolitan Trust Company and were given in renewal of the original obligation. On January 28, 1929, the garnishee took a note from the defendant for a new loan of $12,500, which is still unpaid. The payment of $7,500 heretofore referred to was intended to be applied on account of defendant's indebtedness, but it has never been so applied and is now in the hands of the garnishee.

The garnishee was not the holder of the $25,000 note. It was held by the Metropolitan Trust Company. The garnishee could be called upon only as an endorser to assume its payment, provided it was not met at maturity and the holder demanded that it be paid by the endorser. Just exactly what the relation of Albert M. Greenfield & Co. was to this obligation is not entirely clear. It is set up that the debt represented by it is actually due to Greenfield & Co., but the evidence does not fully establish this. It is argued by plaintiffs that the garnishee had no interest in the $10,000 until the maturity of the renewal note, on which it was an endorser, and had the defendant called upon the garnishee to return the money before that date, it would have been obliged to do so, citing First National Bank of Scranton v. Higbee & Co., 109 Pa. 130, and other cases, and that, until there was an actual appropriation of the money to the purpose in-

tended, which could not and did not take place until some two weeks later, the fund became subject to the attachment. We are not now determining that this would be true in all cases so far as an endorser is concerned. This can be resolved when the facts are fully developed on another trial.

As to the $7,500 item, although it came into the garnishee's hands over two weeks before the then outstanding renewal note was due, it not only was not used to reduce the amount of the defendant's indebtedness as evidenced by that note, since another renewal note was taken for the same amount, but it has never been appropriated for any purpose, being merely held by the garnishee, perhaps it may be concluded for the defendant's account. The garnishee having failed to appropriate it to the payment of the note until the attachment was served, the attaching creditor may have acquired a lien on these funds: Schiff v. Schindler, 98 Pa. Superior Ct. 207. This also can be determined when all the facts are before the court.

The garnishee thus lays out its case so far as the two payments of $10,000 and $7,500 are concerned. It agrees that Berg was indebted to the Publicker Realty & Holding Company at the time he gave to it the original $25,000 note. It is said that on August 12, 1928, Berg gave Greenfield & Co. a check for $10,000 and on the next day Greenfield & Co. loaned Berg $34,473.34 by giving the Publicker Company a check for $34,473.34, representing the proceeds of the $25,000 note and the $10,000 check. The details of this transaction are not clear to us from the record. It is asserted that, on January 28, 1929, Greenfield & Co. loaned Berg a further sum of $12,500. The terms of this loan do not appear in the testimony and no information is given about it. It is alleged that the $10,000 paid by Berg to Greenfield & Co. was paid under an agreement that the money could be applied on either the $25,000 note or the debt of $12,500, and that it was applied on the former. It

is admitted that Greenfield & Co. have not yet determined on which debt to credit the $7,500 payment, but it is set up that, however it shall be applied, Berg still owes Greenfield & Co. approximately $23,000. This figure is somewhat difficult to verify from the record because of a lack of full explanation.

In view of the court's instruction that the attachment did not bind the funds coming into the hands of the garnishee down to the time of trial, and the lack of full explanation as to the indebtedness of defendant to the garnishee and as to the two payments of $10,000 and $7,500, we conclude that a new trial must be granted on plaintiffs' appeal, and we might well close the opinion at this point. Inasmuch, however, as the objections raised by the garnishee will probably arise on the next trial, as they did on the one now under review, it would seem wise to indicate our conclusions touching them.

They relate to three sums in the garnishee's hands, claimed by plaintiffs to be owing to Berg and liable to the attachment. These sums appear in what are known as the Franklin Building account amounting to $2,-727.70, 7th and Chestnut Streets account to January 2, 1929, $795.52, and receipts from 7th and Chestnut Streets from January 2, 1929, to January 21, 1929, $1,-135, making a total of $4,658.22. For these items the trial judge gave binding instructions in plaintiffs' favor. The garnishee contends judgment should have been entered for it non obstante veredicto.

We are requested to determine as a matter of law that plaintiffs are not entitled to take with their attachment the three sums which the court below thought them unquestionably entitled to. The argument of the garnishee is based upon the proposition that the defendant, Berg, could not have recovered these sums from it and hence the attaching creditor cannot. We accept the argument that an attaching creditor's rights cannot rise higher than those which the defendant named in the process had against the garnishee (Austin-Nichols Co. v. Union

Trust Co., 289 Pa. 341), but our difficulty is in deter-
mining that the rights of the garnishee to retain the
funds are so clear that they can be fixed as a matter of
law.

Our study of the record leads us to the conclusion that
the garnishee's rights are not so clear. Greenfield & Co.
managed the Franklin building for Berg, collected the
rents and made the necessary disbursements. At the
time the attachment was served there was to the credit
of Berg in this account $2,727.70. It is claimed that, be-
cause, in addition to managing this property, Greenfield
& Co. was managing another property for Berg at 7th
and Chestnut Streets, and was under a moral obligation
to safeguard two building association mortgages which
it had been instrumental in placing on this property, and
had obtained an oral agreement from Berg by which the
income from that property was appropriated exclusively
to the payment of its operating expenses and carrying
charges, which the income had not met, and because
Berg had authorized Greenfield & Co. to use balances in
the Franklin Building account to make up the deficit on
the 7th and Chestnut Streets property, in pursuance of
which over $22,000 had been transferred on its books
from the Franklin Building account to that of the 7th
and Chestnut Streets property, that although the sum
of $2,727.70 in the Franklin Building account had not
been so transferred, it is to be treated under the author-
ity from Berg as though it had been, as there still ex-
isted unpaid taxes on the 7th and Chestnut Streets prop-
erty amounting to more than the balance shown in the
other account. It is not at all certain that had Berg
demanded this money which stood to his credit, he could
not have recovered it, particularly when the situation
between him and Greenfield & Co. with regard to the
7th and Chestnut Streets property about to be referred
to is taken into account. Certainly it could not be said
as a matter of law that he could not recover it because
of the unpaid taxes on the other property. As we under-

stand the record and the state of the accounts as to both properties, the garnishee on the date of the attachment had been fully repaid for all the actual advances it had made for defendant and there were credit balances of the sums named in each account.

We now come to the 7th and Chestnut Streets account, which in its argument the garnishee divides into two periods, the first up to January 2, 1929, the date of the service of the attachment, and the second between that date and January 21, 1929, when it filed answers to interrogatories. As before stated, this account exhibited the transactions growing out of the garnishee's management of that property. On January 2, 1929, it showed a credit balance in Berg's favor of $795.52, which the court instructed the jury plaintiffs were entitled to under their attachment. The garnishee's position as to this is, that it was the conveyancer for two building associations, and from them, acting in Berg's behalf, it secured two second mortgages on the property aggregating $120,000, that it was under the moral obligation heretofore mentioned to protect the associations, and accordingly it asked, and Berg assented, that the rents of the property should be applied by Greenfield & Co. to the payment of the carrying charges of the property, and it is claimed that the $795.52 net balance as shown in the account as of January 2d is the property of the building associations, (in the language of the garnishee's brief) "in view of the fact that taxes for 1927 and 1928, amounting to approximately $10,000, which were a lien against the mortgaged premises ahead of the building associations' mortgages had not been paid." It should be noted that not the building associations (which have not intervened) make this claim, but the garnishee. This position is, to say the least, a somewhat novel one, and if tenable, would be disturbed by the fact that in the leases for the property which the garnishee made, and which Berg countersigned, it was expressly stipulated that he could cancel the authority to the garnishee to collect the

rents at any time by paying its commissions. We think it cannot be successfully argued under the state of facts above outlined that the garnishee held this money in trust for the building associations (which they do not come forward and assert) and hence such cases as Willis v. Curtze, 203 Pa. 111; Austin-Nichols Co. v. Union Trust Co., 289 Pa. 341, and Wyoming Construction Co. v. Franklin Trust Co., 298 Pa. 582, relied upon by the garnishee, do not apply.

This brings us to the last matter for consideration, the receipts from the 7th and Chestnut Streets property by the garnishee between January 2, 1929, when the attachment was served, and January 21, 1929, the date of the filing of the answers to the interrogatories. These amounted to $1,135. The court directed the jury to find in plaintiffs' favor for this sum. During this period after the service of the attachment there was paid out of the account by the garnishee the sum of $926.50, made up of payroll of employees of the building, telephone service, repairs, electric lamps, building association dues and agent's commissions. The same general argument is made in the garnishee's behalf as to the balance of $1,135 as is made with reference to the balance to January 2, 1929, and, for the reasons stated as to that item, it cannot prevail as to this. Expenditures made by a garnishee after the service of an attachment cannot be set off: Pennell v. Grubb, 13 Pa. 552; Roig v. Tim, 103 Pa. 115; Schiff v. Schindler, 98 Pa. Superior Ct. 207. We think, however, that the garnishee should not be held liable to plaintiffs for the commissions due to it on the rents which it had collected during this period. We have also reached the conclusion that plaintiffs' contention that they are entitled to interest on the sums in the garnishee's hands should not be sustained. The garnishee's rights to the moneys in its hands were sufficiently in doubt to warrant it in assuming the position which it did and in filing a plea of nulla bona.

On the plaintiffs' appeal the judgment of the court below is reversed and a venire facias de novo is awarded. The garnishee's appeal is dismissed.

DISSENTING OPINION BY MR. JUSTICE KEPHART:

I disagree with the majority in holding that the process of attachment binds all property belonging to the defendant or money due him which may come into the hands of the garnishee or which the latter receives up to the time of trial. Where the garnishee files a plea of nulla bona or answers interrogators that he has no property, he should be relieved of any further liability as a garnishee; the attachment, like a writ of foreign attachment where no goods or property are attached, should fall.

Under the majority rule, and under the practice as the writer of this opinion knows it, an attaching creditor may stand by after the attachment is served, and permit that process to stand as a trap or a snare for the garnishee, to catch any money or property that may later come into his hands no matter how distant the day of trial may be. Ordinarily, counsel for an attachment creditor answering that his client has no property, feels that he has done his full duty and his client is relieved of further responsibility. Now under the majority rule a different burden rests on the garnishee. Take as an illustration a banking institution, which pleads no property or answers to the same effect. The attaching creditor, having no interest to press for trial, permits the writ to remain without further action. The majority causes the garnishee to be the aggressor, to place the case for trial and keep in touch with it until trial. The penalty for failure is that if the bank six months or a year later receives for deposit funds of the defendant, they are covered by the attachment. A garnishee should not be punished merely because he happens to be served as a garnishee with no funds of defendant in the writ, nor should he be placed in the position of a collection agency for the attaching creditor. It has been suggested the garnishee

should force the case to trial. Why? He has done all the law contemplates in answering. He is not in default, yet he becomes so unless, differing from any other case, he actively takes steps to relieve himself of liability.

Other classes of executions do not have such wide or continuing effect. For instance, a fieri facias must be returned at the next return day, thereafter no after acquired property is bound; so too, an attachment execution has a return day, but the attaching process lives beyond the return day, forever or until the day of trial. This is manifestly unfair.

The pertinent question here discussed was before this court on a writ of foreign attachment and the opinion was written by Mr. Justice SCHAFFER, the writer of the majority opinion in this case. In David E. Kennedy, Inc., v. Schleindl, 290 Pa. 38, 41, he says: "It was not intended to establish the rule that a writ of attachment returned by the sheriff and operating on nothing would have vitality through a period of months or years to bind property subsequently coming into the hands of the person named in the writ as garnishee and bring it under the control of the court. Such a contract we regard as inconsistent with the letter and spirit of the foreign attachment legislation, and not in harmony with the decisions of our courts. Its effect would be to create surprise, vexation and loss in many instances and would make the writ of foreign attachment a trap in which the innocent might be ensnared. The only lack of similarity between that case and the present one is that here the property came into the hands of the garnishee prior to the return day of the writ. There is no basis in reason, however, for a different result to be reached because of that fact and we so hold." The opinion refers to a Superior Court case. This reasoning is applicable here where the garnishee has no property.

For this reason, I would not modify or reverse the lower court.